Sucesión de Luis Roche Bermúdez, etc., demandantes y re-
curridos, *v.* Banco de la Vivienda y Cooperativa de Se-
guros de Vida de Puerto Rico, demandados y recurrente
el primero.

*Número:* R-74-143        *Resuelto:* 9 de abril de 1975

*Miguel Ramón Aguiló* y *William Malavé,* abogados del recurrente Banco de la Vivienda; *Vicente Rodríguez Feliciano,* abogado de la Cooperativa de Seguros de Vida de Puerto Rico; *Escalona Vicenti & Escalona Colón,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En el año 1967 Luis Roche y su esposa tomaron a préstamo del Banco de la Vivienda la cantidad de $6,000 por cuya suma suscribieron pagaré a favor del Banco y constituyeron hipoteca sobre un solar que tenían en usufructo afectando además la casa que eventualmente construyeron en el mismo. Se convino la amortización del préstamo en plazos mensuales de $38.66 parte de cuya suma la destinaría el acreedor al pago de las primas de un seguro de vida e hipoteca que tenía contratado con la Cooperativa de Seguros de Vida de Puerto Rico. Al día siguiente de constituida la hipoteca, esta aseguradora expidió el correspondiente certificado de seguro colectivo cubriendo al deudor Roche y bajo cuyos términos se obligó a pagar a su asegurado Banco de la Vivienda el balance pendiente del referido préstamo al sobrevenir la muerte del deudor. El prestatario Roche falleció en el 1971 y cuando el Banco acreedor reclamó a la aseguradora el balance impagado, ésta negó cubierta y se limitó a devolver la suma de $181.83 que había recibido por concepto de primas desde el 1967.

Fundó la Cooperativa de Seguros su rechazo de responsabilidad en la violación por el Banco de la Vivienda de una cláusula de la póliza de seguro colectivo o grupal que dispone: "Para que el balance de su préstamo pueda estar cubierto por esta póliza, el deudor debe estar físicamente capacitado para desempeñar los deberes normales de su oficio o empleo al momento de obtener el préstamo." Se probó que para el 20 de abril de 1967 cuando tomó el préstamo, Roche se hallaba físicamente incapacitado, hecho que no ocultó pues en la solicitud

informó que pagaría los plazos con su pensión de incapacidad; y que su condición de invalidez era apreciable a simple vista ya que apenas movía brazo y pierna de uno de sus lados.

La negativa de la aseguradora dio lugar a este pleito de los Sucesores de Luis Roche en que aparte de reclamar el seguro también pidieron daños *ex contractu* alegando que para seguir pagando la hipoteca hubieron de desalojar la casa y darla en arrendamiento con la consecuente dispersión de la familia. El Banco de la Vivienda presentó reconvención exigiendo de la sucesión de su prestatario el balance de $5,475.93 e intereses, e instó demanda de coparte contra la Cooperativa de Seguros haciéndola responsable de cualquier sentencia que contra el Banco recayera por la reclamación de los demandantes. El tribunal de instancia desestimó toda acción contra la Cooperativa de Seguros y condenó al Banco a cancelar el balance de la hipoteca, a devolver a los sucesores de Roche los plazos del préstamo por ellos pagados después de fallecido su causante y a pagar a los demandantes $9,000.00 de daños y $2,000 de honorarios de abogado.

Expedimos auto de revisión y hemos de revocar.

La póliza de seguro colectivo extendida por la Cooperativa de Seguros al Banco de la Vivienda, contiene además de la cláusula excluyente de impedidos como elegibles, las siguientes disposiciones:

"Esta póliza será incontestable después de haber estado en vigor por dos años a partir de la fecha de efectividad, excepto por falta de pago de primas.

La Cooperativa de Seguros tendrá el derecho de inspeccionar en el local del asegurado [Banco de la Vivienda] los libros y récords relacionados con los préstamos asegurados bajo esta póliza."

Desde que se expidió certificado de seguro a Luis Roche en 1967 hasta su deceso en 1971 transcurrieron cuatro años sin que la aseguradora cuestionara e impugnara su validez, aceptando los pagos de primas que le remitía el Banco de la Vi-

vienda. Durante los dos primeros años de vigencia del seguro estaba a su disposición en las oficinas del Banco, para el examen de inspección que expresamente se reservó, la solicitud de Roche en la que se afirmaba con franqueza su condición de incapacidad física que era además fuente de pensión para pagar los plazos.

■ El punto hasta el cual podía la incapacidad física del prestatario Roche descalificarlo como riesgo aceptable bajo la póliza de seguro de hipoteca era cuestión a determinarse por la aseguradora, no por el Banco, con el auxilio usual de examen del deudor por un médico, obtención de su historial clínico y los demás trámites rutinarios de que se valen las compañías de seguros antes de obligarse sobre la expectativa de vida de su asegurado. Si en dos años la Cooperativa de Seguros no mostró interés en protegerse contra este riesgo, carece de razón fundada su aspiración a eludir la cláusula que transcurridos dos años, hace la póliza indisputable. *Simpson* v. *Phoenix Mutual Life Ins. Co.*, 247 N.E.2d 655 (1969); *Cragun* v. *Bankers Life Company*, 497 P.2d 641 (1972).

■ El principio de incontestabilidad de una póliza es pilar del sistema de seguros consignado en el Art. 13.050 (26 L.P.R.A. sec. 1305) (¹) del Código de Seguros. Es vital resguardo del derecho del asegurado y sus beneficiarios en un tipo de contratación en que éste simplemente se adhiere a los términos de la póliza cuidadosamente escogidos por la aseguradora. Cualquier acto o contrato que disminuya este precepto de protección legislada para el asegurado, caerá en el

---

(¹) Art. 13.050—Código de Seguros.

"Deberá haber una disposición al efecto de que la póliza será incontestable después de haber estado vigente, en vida del asegurado, por un período no mayor de dos años a partir de la fecha de su expedición, excepto por la falta de pago de primas y, a opción del asegurador, por la violación de cualesquiera de las limitaciones permitidas en la sec. 1323 si están contenidas en la póliza."

vicio de nulidad sancionado por el Art. 4 del Código Civil. (²)
La incontestabilidad es condición impuesta por la Ley al nego-
cio de seguros, contra la cual no prevalecerán la ignorancia
de hechos de fácil descubrimiento, ni la delegación por la ase-
guradora de aquellas funciones de otorgamiento y adminis-
tración de la póliza que puedan sacar a la luz en el término
legal, la falsedad o engaño que den lugar a la impugnación del
seguro.

■ La cláusula de incontestabilidad en la póliza, dice
Couch, va dirigida a requerir del asegurador que investigue
un hecho con razonable prontitud si desea negar responsabili-
dad basándose en la falsedad de la representación o asevera-
ción del asegurado. Impide que el asegurador entretenga al
asegurado, por inacción, con una seguridad ilusoria durante
el tiempo en que mejor pueden depurarse y comprobarse los
hechos, sólo para litigarlos tardíamente, muchas veces des-
pués de muerto el asegurado. La cláusula de incontestabilidad
tiene como propósito suprimir todas las aseveraciones y con-
diciones que puedan derrotar el derecho del asegurado una vez
transcurrido el término estipulado. Couch, *On Insurance, 2d,*
Vol. 18, sec. 72:2, pág. 42. A su vez Appleman no considera
contrario a la política pública que las partes en el contrato de
seguro fijen un plazo limitado dentro del cual ha de descu-
brirse cualquier fraude urdido para obtener el seguro y ale-
garlo como defensa, y añade que a menos que el fraude sea
específicamente excluido de la cláusula, el asegurador no
podrá suscitarlo como defensa una vez expirado el término de
contestabilidad. Appleman, *Insurance Law & Practice,* Tomo
1, sec. 311, pág. 538.

---

(²) Art. 4, Código Civil (31 L.P.R.A. sec. 4)
"Son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los
casos en que la misma ley ordene su validez.
"Los derechos concedidos por las leyes son renunciables, a no ser esta
renuncia contra la ley, el interés, o el orden público, o en perjuicio de
tercero."

. En cumplimiento de la Ley, la póliza emitida en el caso de autos por la Cooperativa de Seguros dispuso que se tornaría incontestable a los dos años de estar en vigor. Entre las defensas anuladas por la cláusula de incontestabilidad está la invocada tardíamente de que el beneficiario estaba físicamente incapacitado al momento de obtener el préstamo.

La fuerza de esta garantía de incontestabilidad reside en su aplicación uniforme, sin desviaciones o acomodos a circunstancias variables que enervarían la integridad de la protección legislada. El debilitamiento del precepto dará al traste con el sistema. La severa observancia del principio de incontestabilidad nada tiene de opresivo para la aseguradora, informada como está del régimen de Ley bajo el cual hace negocios, y habiendo libremente insertado en la póliza la cláusula limitativa de su derecho a descubrir el fraude o la falsa representación. La renuncia de defensas, expirado el plazo de contestabilidad fue parte de su consentimiento.

La reclamación por daños contra el Banco, improcedente en esencia, queda adicionalmente desvirtuada por lo aquí resuelto.

*Se dictará sentencia condenando a la aseguradora Cooperativa de Seguros de Vida de Puerto Rico a honrar en toda su extensión el seguro otorgado a Luis Roche a través del Banco de la Vivienda, pagando a éste el balance del préstamo hipotecario, pendiente a la fecha de muerte de Roche, con sus intereses; y deberá el Banco de la Vivienda devolver a los herederos de su prestatario los plazos por ellos pagados con posterioridad al deceso de su causante, y además otorgar escritura de cancelación total del crédito hipotecario.*

*La sentencia revisada, con la sola excepción de su pronunciamiento ordenando al Banco de la Vivienda la cancelación de la hipoteca y devolución a los Sucesores de Luis Roche de los plazos que hayan pagado desde que murió su causante, ha de ser revocada.*