TEODORO RODRÍGUEZ y JULIA RUIZ DE RODRÍGUEZ por sí y en representación de sus hijos menores JUAN CARLOS, LUIS ALBERTO y JUDITH TERESA RODRÍGUEZ RUIZ, demandantes y recurridos, *v.* FÉLIX BIGAY RAMÍREZ y JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, demandados y recurrentes.

*Número:* R-79-249 *Resuelto:* 18 de junio de 1980

*Fiddler, González & Rodríguez* y *Eduardo Negrón Rodríguez,* abogados de los recurrentes; los recurridos no comparecieron.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Teodoro Rodríguez adquirió de la John Hancock un seguro de vida sin someterse a examen médico. Desde el 8 de

julio de 1965 pagó las primas con regularidad. Luego de un examen, el 2 de agosto de 1970 fue declarado incapacitado totalmente por una afección cardíaca. Infructuosamente reclamó relevo del pago de primas según estipulado en la póliza. Aún así, las continuó pagando. Presentó demanda solicitando su devolución y compensación por daños. La demandada contestó aduciendo, entre otras defensas, que la incapacidad era el resultado de una enfermedad preexistente a la fecha de entrar en vigor la póliza —excluida por sus términos— que Rodríguez omitió informar. Éste había sido tratado de una afección cardíaca allá para noviembre y diciembre de 1964. La aseguradora alegó que de ser responsable, sólo lo sería de la devolución de la primas y del relevo de las subsiguientes.

Oportunamente, el tribunal dictó sentencia ordenando a la aseguradora devolver todas las primas cobradas indebidamente y sus intereses legales; concede $3,500.00 por los daños sufridos por el demandante y su esposa, y desestima la reclamación de sus hijos menores. Razonó dicho foro que la cláusula de indisputabilidad de la póliza impedía que, transcurridos tres (3) años, la aseguradora levantase la defensa de que la incapacidad no estaba cubierta por provenir de enfermedad contraída antes de su vigencia. Aplicó el artículo que establece, según su propio título, un "límite de tiempo para ciertas defensas" en cuanto a pólizas de seguro por incapacidad, y que en su inciso (b) provee:

Ninguna reclamación por pérdida incurrida o por incapacidad (según se definen en la póliza) que comience después de transcurridos tres años desde la fecha de expedición de esta póliza, se reducirá o denegará por el fundamento de que, con anterioridad a la fecha de efectividad de la cubierta de esta póliza, existía una enfermedad o lesión física no excluida de la cubierta por su nombre o descripción específica, efectiva en la fecha de la pérdida. 26 L.P.R.A. sec. 1606. [1]

---

[1] Toda revisión se da contra la sentencia y no contra sus fundamentos. *Collado* v. *E.L.A.*, 98 D.P.R. 111 (1969); *Rodríguez* v. *Serra*, 90 D.P.R. 776 (1964); *Alum Torres* v. *Campos del Toro*, 89 D.P.R. 305 (1963); *Pueblo* v. *Club*

## I

A solicitud de la aseguradora, revisamos. Su alegato y discusión se centralizan sobre la alegada falta de cubierta. Argumenta que la póliza estableció como excepción a la concesión del relevo de primas el que "(1) . . . la incapacidad resultare de un daño corporal sufrido o una enfermedad contraída antes del pago de la primera prima" para este beneficio, al amparo de los Arts. 13.050 y 13.230 del Código de Seguros, que en lo pertinente rezan:

Deberá haber una disposición al efecto de que la póliza será incontestable después de haber estado vigente, en vida del asegurado, por un período no mayor de dos años a partir de la fecha de su expedición, *excepto* por la falta de pago de primas y, a *opción* del asegurador, *por la violación de cualesquiera de las limitaciones permitidas en la sec. 1323 de este título si están contenidas en la póliza.* 26 L.P.R.A. sec. 1305. (Énfasis nuestro.)

. . . . . . . .

(4) El derecho del asegurador de limitar su responsabilidad con respecto a cualesquiera . . . beneficios provistos en caso de que el asegurado se incapacite . . . no estará sujeto a esta sección ni limitado o afectado por la misma, ni tampoco por las secs. 1305 y 1315 de este título. 26 L.P.R.A. sec. 1323.

 No tiene razón. Aunque la póliza contiene una cláusula *general* redactada conforme lo preceptuado en el Art. 13.050, *también* tiene una cláusula en *particular* adicional de incontestabilidad, aplicable por sus propios términos, *a los beneficios por incapacidad.* (²) La proposición

*Management, Inc.*, 88 D.P.R. 189 (1963). Por ello no nos detendremos a analizar exhaustivamente el error de la sala sentenciadora al aplicar la sección antes transcrita. A igual resultado, aunque por otra avenida, llegaremos.

(²) La cláusula de incontestabilidad *general* a que hacemos referencia reza:

"Esta póliza, excepto cualquier disposición para beneficio por incapacidad o muerte accidental, será incontestable luego de haber estado en vigor en vida del asegurado por 2 años desde la fecha de su expedición, excepto por la falta de pago de las primas." (Traducción nuestra.)

La cláusula de incontestabilidad *especial* referente a beneficios por incapacidad reza:

"Esta disposición de Beneficios por Incapacidad será incontestable luego de haber estado en vigor en vida del asegurado y sin que haya ocurrido la

de la aseguradora sería correcta si la póliza contuviera solamente la cláusula de incontestabilidad *general.* Podría entonces sostenerse que el asegurador ejercitó su opción de excluir de *manera expresa* los beneficios por incapacidad de los efectos de la incontestabilidad según lo autoriza la Sec. 1305. (³) Ahora bien, al insertarse una cláusula de incontestabilidad en particular para cubrir beneficios de incapacidad, la única y lógica interpretación es que *no* se excluyeron tales beneficios de los efectos de dicha cláusula, sino, por el contrario, se limitó el período en que la aseguradora podía invocar sus defensas en cuanto a los mismos. En este sentido, los beneficios por incapacidad quedaron igualmente sujetos a que transcurrido el período de tres (3) años serían indisputables. Esta interpretación es congruente con el principio de que, en casos de ambigüedad sobre exclusiones en torno a cláusulas de incontestabilidad y beneficios por incapacidad, las dudas deben resolverse a favor del asegurado. 18 Couch, *op. cit.,* 2d, sec. 72:29, págs. 59–60.

## II

■ Nuestra decisión de que los beneficios de incapacidad están sujetos a incontestabilidad nos obliga a considerar si la defensa levantada es o no de cubierta. Si lo fuera, no quedaría vedada. Estaríamos ante la situación de un riesgo contra el cual el asegurado nunca estuvo protegido, pues la cláusula de incontestabilidad no puede tener el efecto de ampliar la cubierta. (⁴)

---

incapacidad total del asegurado por los tres años desde la fecha de su expedición, excepto por falta de pago de las primas." (Traducción nuestra.)

(³) 18 Couch, *On Insurance,* 2d, sec. 72:26, pág. 57 y 72:28, págs. 58–59, 72:59, pág. 77 (1968); 1 Appleman, *Insurance Law and Practice,* sec. 331, págs. 585–86; sec. 336, págs. 611 a 617 (Rev. Ed. 1965). Como ejemplo de una excepción expresa, *Millman* v. *Metropolitan Life Insurance Company,* 241 A.2d 566 (1968).

(⁴) 1 Appleman, *op. cit.,* sec. 331, pág. 588; 18 Couch, *op. cit.,* sec. 72:61 a 72:65, págs. 79–83; *Home Life Insurance Company* v. *Requeira,* 313 So.2d 438 (1975); *Minnesota Mutual Life Insurance Company* v. *Morse,* 487 S.W.2d 317 (1972); *Allen* v. *Aetna Life Ins. Co.,* 563 F.2d 1240 (1977); *First Pa. & B. T. Co.* v. *United States Life Ins. Co., City of N.Y.,* 421 F.2d 959 (1969); *National Life*

6

El problema de determinar qué defensas impide una cláusula de incontestabilidad ha producido serias discusiones que giran principalmente alrededor de los casos de *Metropolitan Life Ins. Co. v. Conway*, 169 N.E. 642 (1930), y *Simpson v. Phoenix Mut. Life Ins. Co.*, 247 N.E.2d 655 (1969).

*Conway* estableció la distinción entre defensas basadas en condición de seguro y las basadas en limitación de riesgo, dictaminando que las primeras quedan vedadas luego de concluido el período de contestabilidad, no así las segundas, relativas a cubierta. No nos satisface este enfoque. Es susceptible de ser empleado para burlar los propósitos de las cláusulas de incontestabilidad. Por ende, suscribimos la norma de *Simpson* con su pronunciamiento medular de que lo crucial en la dicotomía y distinción entre condición y limitación del riesgo o cubierta es la oportunidad de descubrimiento. (⁵) En *Sucn. Roche v. Banco de la Vivienda*, 103 D.P.R. 656, 659–60 (1975), aplicamos esta orientación. Allí señalamos que entre los propósitos de la cláusula de incontestabilidad, estaba el fijar un período durante el cual la aseguradora venía obligada a investigar para poder descubrir cualquier hecho o circunstancia que pudiese tener el efecto de derrotar la oportuna reclamación del asegurado

*and Accident Insurance Co. v. Mixon*, 282 So.2d 308 (1973); *Carlson v. New York Life Insurance Company*, 222 N.E.2d 363 (1966); *National Life and Accident Insurance Co. v. Chapman*, 127 S.E.2d 157 (1962); *Sanders v. Jefferson Standard Life Ins. Co.*, 10 F.2d 143 (1925); *Gordon v. Unity Life Ins. Co., Inc.*, 39 So.2d 812 (1949).

La recurrente hace énfasis en el caso de *Apter v. Home Life Ins. Co. of New York*, 194 N.E. 846 (1935). Éste decide, en cuanto a una póliza de incapacidad, que dado a que una cláusula de incontestabilidad no es un mandato en cuanto a cubierta, el asegurador puede excluir cualquier causa que se originase antes de advenir efectiva la póliza. Notamos que *Apter* se resuelve utilizando el enfoque de *Conway*, infra, que rechazamos.

(⁵) En general, Keeton, *Basic Text on Insurance Law*, St. Paul, Minn., West Pub. Co., 1971, págs. 393–398. También: F. McCarthy, *Reinstatement Misrepresentation and Incontestability: A Polysyllabic Puzzle*, 4 The Forum 40 (1968); Rall y Sfikas, *Group Insurance—Is the Incontestable Clause a Bootstrap which Enlarges Coverage?*, 5 The Forum 51 (1969); G. Salzman, *The Incontestable Clause in Life Insurance Policies*, 554 Ins. L.J. 142 (1969).

o beneficiarios. Una vez transcurrido el mismo, no podía levantar tales defensas.

En el caso de autos, la aseguradora John Hancock tuvo tiempo suficiente para averiguar e investigar lo concerniente al tratamiento del demandante Rodríguez debido a la afección cardíaca sufrida antes de entrar en vigor la póliza. De hecho un año después de expedir la póliza sobre la cual gira la controversia, expidió *otra* a favor de Rodríguez, *previo examen médico*, sin que la denegara por razones de salud. Ella pudo, como correctamente concluyó el tribunal sentenciador, haber desplegado la diligencia que demostró en este litigio para dejar probado —dentro del período de contestabilidad— que Rodríguez padecía previamente la enfermedad que luego le incapacitó. No podemos pasar por alto que uno de los objetivos de estas cláusulas es evitar litigación años más tarde sobre cuestiones que se prestan a mejor descubrimiento en etapas más tempranas. Entendemos que la defensa de la aseguradora trata verdaderamente de una condición o garantía de buena salud y no propiamente de una limitación de riesgo. Pretende, ahora, cubrirse contra las representaciones que antes no objetó. Esta apreciación se comprende mejor si observamos que no se excluyen causas específicas o enfermedades en particular, sino que se hace una exclusión general de la incapacidad proveniente de cualquier enfermedad no excluida por los propios términos de la póliza que existiera antes de su vigencia. En casos de esta naturaleza, es función de los tribunales lograr un equilibrio de los intereses en conflicto, protegiendo la confianza del asegurado, como consumidor, de que podrá contar con los beneficios por él pactados y pagados. Como dijimos en *Sucn. Roche*, supra, la cláusula de incontestabilidad "[i]mpide que el asegurador entretenga al asegurado, por inacción, con una seguridad ilusoria durante el tiempo en que mejor pueden depurarse y comprobarse los hechos . . ." (pág. 660). Resolvemos que la cláusula de excepción al relevo de primas no difiere en nada de otras

defensas que reconocidamente no pueden calificarse como de cubierta. Conllevaría una burla a los propósitos de la cláusula de incontestabilidad. (⁶) Por ende, no erró el tribunal sentenciador al relevar al demandante Rodríguez del pago de primas y ordenar la devolución de las pagadas.

### III

Resta considerar la procedencia o no de $3,500.00 en concepto de daños morales resultantes del incumplimiento del contrato bajo el Art. 1054 del Código Civil, 31 L.P.R.A. sec. 3018. Esta sanción reparadora fue erróneamente adjudicada por resultar de una situación imprevista. Difícilmente podía contemplarse que debido a que el asegurado Rodríguez se trasladaría a España a estudiar medicina —recibiendo entre pensiones de Seguro Social y Veteranos poco más de $500.00— el pago de la prima en controversia, alrededor de $19.48 mensuales, representaría una reducción sustancial al presupuesto familiar disponible.

Igualmente consideramos error la concesión de honorarios de abogado. La aseguradora John Hancock no procedió con temeridad al litigar este asunto, hasta el presente no pautado en nuestra jurisdicción.

*Se dictará sentencia que modifique la del tribunal de instancia a los fines de eliminar la concesión de daños morales y honorarios de abogado. Así modificada, será confirmada.*

---

(⁶) W. F. Young, Jr., *"Incontestable"—As to What?*, 1964 U. Ill. L.F. 323-329.