LUIS E. GARCÍA CURBELO, ETC., demandantes y recurridos, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES, demandada y tercera demandante, y LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE y OTROS, terceras demandadas y recurrentes.

*Número:* RE-85-394          *Resuelto:* 24 de enero de 1991

*José R. González Irizarry* y *Ramón Coto Ojeda,* de *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria,* abogados de la American Defender Life Insurance Co., recurrente; *Samuel E. Polanco,* abogado de los recurridos; *Madelaine Riefkohl-Gorbea,* de *Fiddler, González & Rodríguez,* abogada de Life and Casualty Insurance Company of Tennessee, tercera demandada.

La Juez Asociada Señora Naveira De Rodón emitió la opinión del Tribunal.

I

El 2 de octubre de 1969, en horas laborables, la codemandante recurrida Lourdes I. Rodríguez de García sufrió una caída mientras se desempeñaba como secretaria de la Autoridad de las

Fuentes Fluviales, hoy Autoridad de Energía Eléctrica (en adelante la Autoridad). Al momento del accidente la codemandante se encontraba en avanzado estado de embarazo.

· A consecuencia de dicha caída, la señora Rodríguez de García quedó incapacitada y no pudo reintegrarse a sus labores en la Autoridad. A pesar de ello, continuó percibiendo salarios de su patrono hasta la fecha de su jubilación, 25 de agosto de 1972.

El Fondo del Seguro del Estado (en adelante F.S.E.) certificó una incapacidad del 25% de las funciones fisiológicas generales de la codemandante recurrida al darla de alta en noviembre de 1971. De otra parte, la agencia federal de Seguro Social, en carta de 12 de enero de 1972, la autorizó a recibir los beneficios por incapacidad a partir de mayo de 1970. En dicha carta, la agencia hizo constar que la señora Rodríguez de García se encontraba totalmente incapacitada para toda clase de trabajo desde la fecha en que sufrió el accidente, 2 de octubre de 1969.

Con anterioridad a estas actuaciones del F.S.E. y de la agencia federal, el 21 de octubre de 1969 la codemandante recurrida, con el fin de comprar una vivienda familiar, inició los trámites pertinentes para la obtención de un préstamo hipotecario a través del programa de préstamos del Sistema de Retiro de los Empleados de la Autoridad. Dicho préstamo le fue concedido.

El 13 de marzo de 1970 se otorgó la escritura de "Segregación, Liberación y Compraventa", mediante la cual la codemandante recurrida y su esposo adquirieron una vivienda familiar. En igual fecha, se otorgó la escritura de "Pagaré Hipotecario" en evidencia del préstamo y quedó así constituida una primera hipoteca a favor de la Autoridad.

En la segunda escritura, la Autoridad requirió a la señora Rodríguez de García acogerse a un seguro grupal de vida e incapacidad a ser determinado por el acreedor hipotecario, quien habría de gestionar las pólizas y pagar las primas a nombre de la codemandante recurrida. Ésta, a su vez, consintió a que la Autoridad le descontara de su salario determinadas cantidades por concepto del pago de las primas de dicho seguro.

A partir de abril de 1970, la Autoridad comenzó a descontar de los sueldos de la codemandante recurrida determinadas cantidades mensuales para el pago de las primas de una póliza de seguro grupal de vida e incapacidad que había expedido la aseguradora Life and Casualty Insurance Company of Tennessee (en adelante Life) desde el 1ro de agosto de 1965. La cubierta máxima que estaba en vigor a la fecha de la transacción hipotecaria era de veinte mil dólares ($20,000). Además, se le requirió un seguro expedido por la compañía John Hancock Insurance Co., con una cubierta máxima de diez mil dólares ($10,000).

La póliza expedida por Life se canceló en diciembre de 1971 y la Autoridad gestionó una nueva póliza con otra aseguradora, la American Defender Life Insurance Company (en adelante American).

El 1ro de enero de 1972 entró en vigor la Póliza Grupal Núm. I-203, denominada *Mortgage Policy*, expedida por American a favor del Sistema de Retiro para asegurar los créditos hipotecarios de la Autoridad contra los riesgos de muerte e incapacidad total y permanente de los deudores hipotecarios del Sistema de Retiro. Esta póliza estaba en vigor al momento en que advino efectiva la declaración de incapacidad total y permanente de la codemandante recurrida, 25 de agosto de 1972, fecha en que la Autoridad jubiló a la señora Rodríguez de García.[1]

Luego de declarada su incapacidad total y permanente por el médico de su patrono, la codemandante recurrida reclamó de la Autoridad los beneficios de la póliza de seguro grupal de vida e incapacidad. El Sistema de Retiro reclamó a nombre de la codemandante recurrida dichos beneficios a las aseguradoras American y Life en cartas de 11 y de 27 de diciembre de 1972, respectivamente.

La aseguradora Life negó cubierta por haberse cancelado la póliza, a petición de la Autoridad, en diciembre de 1971. La aseguradora American negó la cubierta, fundándose en una

---

[1] American Defender Life Insurance Company (en adelante American) expidió otra póliza grupal denominada Núm. I-204, para garantizar los préstamos personales.

cláusula de condición preexistente, la cual se hizo formar parte de la Póliza Grupal Núm. I-203, según la aseguradora, en virtud de una enmienda *nunc pro tunc* a dicha póliza.

Ante esta situación, la Autoridad reclamó directamente a la codemandante recurrida el pago de las mensualidades del balance del préstamo hipotecario. Por su parte, la señora Rodríguez de García y su esposo Luis E. García Curbelo instaron demanda contra la Autoridad el 10 de marzo de 1975.

La Autoridad contestó la demanda, negando que hubiese cobrado a la codemandante recurrida prima alguna por concepto de seguro de incapacidad después de haberla incapacitado y negó, a la vez, la existencia de seguro alguno por incapacidad.[2] Levantó como defensa que la señora Rodríguez de García estaba incapacitada y había sido declarada como tal por el Seguro Social federal con anterioridad a la fecha en que obtuvo el préstamo hipotecario. Alegó, además, que la codemandante recurrida ocultó ese hecho al momento de gestionar el préstamo, lo que trajo como resultado que las compañías aseguradoras denegaran la cubierta por incapacidad. La Autoridad instó demanda de terceros contra las aseguradoras American y Life.

La demanda fue enmendada en dos ocasiones y, en la segunda demanda enmendada, la codemandante recurrida incorporó una causa de acción contra cada una de las aseguradoras con el objeto de que éstas le respondieran directamente a los codemandantes. La Autoridad instó entonces demanda contra copartes.

American levantó una nueva defensa en la contestación a la segunda demanda enmendada. Alegó que la señora Rodríguez de García fue declarada total y permanentemente incapacitada por razón del accidente que sufrió en el trabajo mientras no estaba asegurada bajo la Póliza Grupal Núm. I-203. Tampoco existía esta póliza al momento en que la señora Rodríguez de García se convirtió en deudora del Sistema de Retiro.

---

[2] En la contestación al interrogatorio que le sometió la parte demandante, la Autoridad de las Fuentes Fluviales, hoy Autoridad de Energía Eléctrica (en adelante Autoridad) declaró que había hecho tales descuentos.

Por su parte, los codemandantes recurridos alegaron que la American estaba impedida de negar cubierta a la reclamación de la póliza que no fuere la cláusula de condición preexistente, toda vez que una aseguradora que ha negado cubierta a una reclamación alegando un fundamento particular, renuncia a su derecho de alegar subsiguientemente cualesquiera otros fundamentos distintos al original, los cuales pudo haber alegado desde un principio.(3)

El Tribunal Superior dictó sentencia sumaria a favor de la codemandante recurrida y condenó a American al pago de los gastos, costas y honorarios de abogados por temeridad. Determinó que los beneficios por incapacidad total y permanente que concede la Sec. 16 de la póliza expedida por American, advienen exigibles y han de ser concedidos a la codemandante recurrida independientemente de la fecha en que ésta sufrió el accidente y comenzó su padecimiento. Adujo que la razón fundamental para ello es que la Sec. 8 de la Póliza Grupal Núm. I-203 contiene una cláusula de incontestabilidad. Razonó el tribunal que dicha cláusula impedía a la aseguradora, a partir del 2 de enero de 1973, cuestionar la asegurabilidad de la codemandante recurrida a la fecha en que la póliza entró en vigor.

Continuó arguyendo el Tribunal Superior que la cláusula de condición preexistente no formaba aún parte de la póliza y no podía tener efecto retroactivo alguno con relación a un miembro del sistema asegurado bajo la póliza cuya jubilación por incapacidad se produjere, como en este caso, antes de concluirse entre las partes la negociación con relación a dicha cláusula.

En cuanto a la aseguradora Life, se declaró sin lugar la demanda y la demanda de coparte instada por la Autoridad.

---

(3) American, en su escrito de oposición a la moción de sentencia sumaria que presentó la codemandante, por primera vez desde que se inició el litigio, alegó que nunca negó cubierta bajo la Póliza Grupal Núm. I-203, pues jamás se le había sometido reclamación alguna al amparo de esta póliza.

Expresó que le había sido sometida otra reclamación al amparo de otra póliza por ella expedida y denominada Póliza Grupal Núm. I-204, y que la carta de 13 de febrero de 1973, mediante la cual American notificó a la Autoridad que denegaba cubierta a la reclamación de la codemandante recurrida, "lamentablemente por error tipográfico", hizo referencia a la Póliza Grupal Núm. I-203 cuando en realidad se trataba de una reclamación bajo la Póliza Grupal Núm. I-204.

También se desestimó la solicitud de sentencia sumaria de American.

La aseguradora American instó ante nos un recurso de revisión. Alegó la comisión del error siguiente:

A) La Póliza I-203 emitida por la American Defender Life Insurance Company no cubre la reclamación de los recurridos, ya que la misma no cubre incapacidades que se originan en accidentes ocurridos previo a la fecha que entró en vigor la susodicha Póliza.(4) Solicitud de revisión, pág. 7.

Le ordenamos a la parte demandante recurrida que mostrara causa por la cual no procedía revocar la sentencia recurrida. Ésta ha comparecido. Procedemos a resolver sin ulteriores procedimientos.

## II

■ El Art. 14.050 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1405, exige de toda aseguradora que expide una póliza de seguro colectivo de vida que incluya en la misma una disposición que se conoce como cláusula de incontestabilidad. Dicha cláusula debe estipular que "la validez de la póliza no será impugnada, excepto por falta de pago de las primas, una vez que dicha póliza haya estado en vigor por 2 años a partir de la fecha de emisión . . . ". 26 L.P.R.A. sec. 1405(1).

■ Tal requerimiento se estableció con el firme propósito de "suprimir todas las aseveraciones y condiciones que puedan derrotar el derecho del asegurado una vez transcurrido el término estipulado". *Sucn. Roche v. Banco de la Vivienda*, 103 D.P.R. 656, 660 (1975).

---

(4) Por el resultado a que llegamos en este caso, no es necesario discutir los otros dos errores planteados:

"B) Existe controversia genuina sobre hechos materiales que hace improcedente el que se dicte sentencia sumaria en contra de la American Defender Life Insurance Company.

"C) No procede la imposición de honorarios de abogados en contra de American Defender Life Insurance Company." Solicitud de revisión, pág. 7.

■ La intención del legislador al imponer una cláusula de incontestabilidad fue impedir que "el asegurador entretenga al asegurado, por inacción, con una seguridad ilusoria durante el tiempo en que mejor pueden depurarse y comprobarse los hechos, sólo para litigarlos tardíamente, muchas veces después de muerto el asegurado". *Sucn. Roche v. Banco de la Vivienda*, supra. pág. 660.

■ No obstante, el Art. 14.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1403, permite a las aseguradoras incluir disposiciones que en opinión del Comisionado de Seguros sean más favorables a las personas aseguradas.

En el caso de autos, la American se niega a pagar a la codemandante recurrida los beneficios a los que tiene derecho por concepto de una póliza grupal de vida e incapacidad, expedida por ésta para asegurar los créditos hipotecarios del Sistema de Retiro de la Autoridad. Fundó su negativa en la parte sobre cubierta de seguro, Sec. 16 de la Póliza Grupal Núm. I-203, que lee como sigue:

TOTAL AND PERMANENT DISABILITY BENEFIT. – Upon receipt by the Company, while this policy is in force, of due notice and proof, both in writing, that any Debtor, while insured hereunder and prior to his 75th birthday, shall have become totally and permanently disabled solely by reason of (a) bodily injury resulting from an accident occurring while such Debtor is insured under this Policy . . . the Company shall pay the Creditor the amount of (1) all installments on the Debtor's insured indebtedness to the Creditor which have become due since the commencement of such disability and are then unpaid, and (2) each installment of said indebtedness as it becomes due thereafter during the continuance of such disability. Apéndice a Solicitud de revisión, pág. 7.

Dicha póliza también contiene una cláusula de incontestabilidad, en la Sec. 8, que dispone:

INCONTESTABILITY. – This Policy, as herein defined, and the application of the Creditor, a copy of which is attached hereto, constitute the entire contract between the parties, and except for non-payment of premiums, shall be incontestable after one year from its date of issue.

All statements made by the Creditor shall, in the absence of fraud, be deemed to be representations and not warranties and no statement shall avoid any payment under this Policy or be used in defense of a claim hereunder unless it is contained in the application for this Policy. Apéndice a Solicitud de revisión, pág. 6.

De acuerdo con su interpretación, como la Sec. 16 de la Póliza Grupal Núm. I-203 no contenía específicamente una cláusula de incontestabilidad, había que concluir que el asegurador excluyó dichos beneficios de los efectos de la incontestabilidad.

■ Tal alegación es contraria a derecho, y a esos efectos nos hemos expresado: "La incontestabilidad es condición impuesta por la Ley al negocio de seguros, contra la cual no prevalecerán la ignorancia de hechos de fácil descubrimiento, ni la delegación por la aseguradora de aquellas funciones de otorgamiento y administración de la póliza que puedan sacar a la luz en el término legal, la falsedad o engaño que den lugar a la impugnación del seguro." *Sucn. Roche v. Banco de la Vivienda*, supra.

■ Además, dijimos en *Rodríguez v. John Hancock Mutual Life*, 110 D.P.R. 1, 5 (1980), que "los beneficios de incapacidad están sujetos a incontestabilidad . . . ".

La Póliza Grupal Núm. I-203, objeto de esta controversia, en su Sec. 8 contenía una cláusula de incontestabilidad, la cual fijaba un período de tiempo más favorable al asegurado y al tenedor de la póliza. Pues, en lugar del período máximo de dos (2) años que fija el Art. 14.050 del Código de Seguros de Puerto Rico, *supra*, la aseguradora estableció como período máximo un (1) año a partir de la fecha de emisión de la póliza, por lo que dicha sección era de aplicación a toda la póliza en general y, por ende, a la Sec. 16, ya que así lo establece el Código de Seguros de Puerto Rico.

La póliza expedida por la aseguradora American entró en vigor el 1ro de enero de 1972. Al aplicar la Sec. 8 de dicha póliza, la misma se tornó incontestable a partir de 2 de enero de 1973. Una vez resuelto que la Póliza Grupal Núm. I-203 contenía una cláusula de incontestabilidad, pasemos a discutir si la misma

impedía que la aseguradora levantara la defensa de ausencia de cubierta por ser tardía.

## III

■ ¿Le impide una cláusula de incontestabilidad a una aseguradora probar que la pérdida reclamada no está cubierta bajo los términos de la póliza? La contestación es negativa. En 18 *Couch on Insurance 2d* (*Rev. ed.*) Sec. 72:61, pág. 329 (1983), se dice que:

> The incontestable clause does not bar the insurer from showing that the condition or disability is not covered by the policy because it originated or had its inception prior to the attachment of the risk.

■ En el caso *Rodríguez v. John Hancock Mutual Life,* supra, a su vez, sostuvimos que si la defensa levantada frente a una cláusula de incontestabilidad fuese de cubierta, "no quedaría vedada. Estaríamos ante la situación de un riesgo contra el cual el asegurado nunca estuvo protegido, pues la cláusula de incontestabilidad no puede tener el efecto de ampliar la cubierta".

■ Cabe señalar también que no puede crearse una póliza de seguro al amparo de la doctrina de impedimento colateral. Así se afirma en 16B *Appleman, Insurance Law and Practice* Sec. 9090 (1981):

> Insurance contracts cannot be created by estoppel. That doctrine cannot be invoked by an insured to create a primary liability of the insurer for which all elements of a binding contract are necessary. . . . It has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. . . . *[U]nder no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel.* . . . While a forfeiture of benefits contracted for in an insurance policy may be waived, the doctrine of waiver or estoppel cannot create a liability for benefits not contracted for. Nor may a contract, under the guise of waiver, be reformed to create a liability

for a condition specifically excluded by the specific terms of the policy . . . .(5) (Énfasis suplido y escolios omitidos.)

La Sec. 16 de la Póliza Grupal Núm. I-203 trata verdaderamente de una limitación de riesgo y no de una condición o garantía de buena salud. Dicha sección dispone, en lo pertinente, que el asegurado tiene que cumplir con la condición sobre cubierta siguiente:

. . . become totally and permanently disabled solely *by reason of (a)* bodily injury resulting from an accident occurring *while such Debtor is insured under this policy.* . . . (Énfasis suplido.) Apéndice a Solicitud de revisión, pág. 7.

La palabra "riesgo" se define como "posible ocurrencia por azar de un acontecimiento que produce una necesidad económica y cuya aparición real o existencia se previene y garantiza en la póliza y obliga al asegurador a efectuar la prestación normalmente indemnización, que le corresponde . . .". Véase J. Castelo Matrán, *Diccionario MAPFRE de Seguros,* Madrid, Ed. Mapfre, 1988, pág. 244.

Si analizamos en conjunto la definición antes citada y la Sec. 16 de la póliza, no hay duda alguna de que American expresamente declinó asegurar y excluyó de su cubierta bajo la Póliza Grupal Núm. I-203 incapacidades totales y permanentes por razón de daño físico que resultaren de accidentes ocurridos antes de la fecha de efectividad de la póliza.

El *Diccionario MAPFRE de Seguros, op. cit.,* pág. 112, define "exclusión de riesgo" como la "decisión, que generalmente corresponde a la entidad aseguradora, en virtud de la cual no quedan incluídas [sic] en las garantías de la póliza determinados riesgos o, quedando incluídos [sic] éstos, las garantías del contrato no surtirán efecto cuando concurran respecto a ellos determinadas circunstancias o condiciones preestablecidas".

---

(5) Véanse: *Brown v. First Ins. Co. of Hawaii,* 424 F.2d 680 (1970); *Farber v. Great American Ins. Co.,* 406 F.2d 1228 (7mo Cir. 1969); *Simmons v. Continental Cas. Co.,* 410 F.2d 881 (8vo Cir. 1968); *Texas Farmers Ins. Co. v. McGuire, Tex.,* 744 S.W.2d 601 (1988); *ABCD...Vision v. Fireman's Fund Ins.,* 744 P.2d 998 (1987).

Al dejar American fuera de la cubierta de la póliza todo accidente ocurrido antes de la vigencia de la misma, no puede exigírsele responsabilidad por un riesgo que no asumió cubrir. Recordemos que este Tribunal ha sostenido que un accidente acaecido antes del período de cubierta de la póliza no está cubierto. Véase *Saavedra v. Joyerías Gordons, Inc.*, 120 D.P.R. 358 (1988), revocado en parte por *Albany Ins. Co. v. Cía Des. Comercial P.R.*, 125 D.P.R. 421 (1990).(6)

## IV

La Póliza Grupal Núm. I-203 constituye el contrato acordado entre la aseguradora y el Sistema de Retiro. Dicho contrato de seguro es la ley entre las partes. Arts. 1044 y 1210 del Código Civil, 31 L.P.R.A. secs. 2994 y 3375. Si sus términos, condiciones y exclusiones son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse.(7) Este Tribunal ha resuelto reiteradamente la obligatoriedad de las cláusulas del contrato de seguro en ausencia de ambigüedad en la interpretación de las mismas. Al respecto, en *Casanova v. P.R. Amer. Ins. Co.*, 106 D.P.R. 689, 696–697 (1978), indicamos lo siguiente:

> Aunque el contrato de seguro es un típico contrato de adhesión que debe interpretarse liberalmente a favor del asegurado . . . no se trata aquí de una cláusula obscura o ambigua. La adhesión no implica una declaración de nulidad del contrato . . . . La cláusula 11 en virtud de la cual actuó la recurrente es clara y por tanto obligatoria para el asegurado. (Citas omitidas.)

Por otra parte, American pudo muy bien haber cubierto los accidentes acaecidos con anterioridad a la emisión de la póliza, si

---

(6) Este caso resolvió que en una póliza *comprehensive* que cubre daños causados por un siniestro (*occurrence*), el momento decisivo para considerar si existe o no cubierta es la fecha en que ocurre el daño y no cuando se cometió el acto negligente que lo provoca.

(7) Véase el Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471:
"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas."

así lo hubieran acordado las partes y especificado en el contrato. Sin embargo, American quiso excluir de la cubierta dichos accidentes al indicar que estarían cubiertos sólo aquellos que ocurrieron durante la vigencia de la póliza. Sobre este particular nos ilustra nuevamente el tratadista Couch al señalar que:

Although insurance policies ordinarily are prospective in operation only, they may be made retroactive as to the time of attachment so as to provide for indemnity for a loss which occurred prior to the date of the policies, for there is no principle of law which denies to parties the right to assume obligations antedating the date of the contract if the parties, for a valuable consideration, so elect, provided, of course, there is no fraud, concealment, or material misrepresentation.[8] (Escolios omitidos.) 9 *Couch on Insurance 2d* Sec. 39:87, págs. 571–573 (1985).

La póliza expedida por American en su Sec. 16 establecía el riesgo cubierto por la misma: *incapacidad por razón de daño físico como resultado de un accidente que ocurriera mientras el deudor estuviese asegurado bajo la póliza.* Las partes no acordaron asegurar los accidentes ocurridos antes de la emisión de la póliza. Por lo que, en el caso de autos, al incapacitarse la codemandante recurrida como resultado de un accidente que ocurrió con anterioridad a la emisión de la póliza, dicho accidente es un riesgo no cubierto por la póliza de seguros de American.

Resolvemos que la cláusula de incontestabilidad no puede tener el efecto de ampliar la cubierta. La defensa de ausencia de cubierta no fue renunciada y la aseguradora no estaba impedida de levantarla debido a la cláusula de incontestabilidad.

## V

Por las razones antes expuestas, *se dictará sentencia en la que se expide el auto solicitado, se revoca la sentencia recurrida*

---

(8) Véanse: *Travelers Ins. Co. v. Summers*, 696 F.2d 1311 (11mo Cir. 1983); *St. Michaels Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 496, N.E.2d 1176, (1986); *Krause v. Washington Nat. Ins. Co.*, 468 P.2d 513 (1970); *Georgia Casualty & Surety Co. v. Almon*, 176 S.E.2d 205 (1970).

*y se devuelve el caso al tribunal de instancia para procedimientos ulteriores compatibles con lo aquí resuelto.*

El Juez Asociado Señor Negrón García se inhibió.