ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LUZ M. RAMÍREZ RIVERA<br><br>DEMANDANTE-APELANTE<br><br>V.<br><br>OPTIMA SEGUROS; Y OTROS<br><br>DEMANDADO-APELADO | KLAN202400095 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón |
| | | Civil Núm.:<br>BY2023CV04118 |
| | | SOBRE:<br>Daños y Perjuicios |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Salgado Schwarz, Carlos G., Juez Ponente.

# S E N T E N C I A

En San Juan, Puerto Rico, a 19 de abril de 2024.

Comparece Luz M. Ramírez Rivera (en Adelante "Apelante" o "Sra. Ramírez Rivera") mediante escrito de apelación y solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia (en adelante "TPI") el 4 de diciembre de 2023. En esa ocasión, el TPI ordenó la desestimación de la Demanda en cuanto a la codemandada Óptima Seguros.

Con el beneficio de la comparecencia de ambas partes y por los fundamentos que exponemos a continuación, **confirmamos** la Sentencia apelada.

-I-

A continuación, exponemos los hechos pertinentes ante nuestra consideración.

Según surge de la *Demanda* y *Demanda Enmendada*, el 17 de febrero de 2023, mientras la Apelante transitaba por la Avenida Gregorio Ledesma en Levittown el vehículo en el que se encontraba fue impactado en la parte frontal, por el vehículo que conducía la joven Tisha L.

Número Identificador

SEN2024_____

Flores Miranda (en adelante "Flores Miranda"), el cual está asegurado por Óptima Seguros. Como consecuencia del accidente, la Apelante alega haber sufrido daños corporales.

El 22 de febrero de 2023, el Sr. Jorge R. Ramírez Figueroa[1] (en adelante "Sr. Ramírez Figueroa") suscribió una *Carta de Pago y Relevo*[2]. Mediante dicha carta, Ramírez Figueroa exoneró a Óptima Seguros y a la Sra. Janitza Miranda Ortíz (en adelante "Sra. Miranda Ortíz") "*de cualquiera y todas acciones, causas de acción, reclamaciones y demandas por, sobre, o en virtud de cualquier daño, perdida [sic] o perjurio que hasta haya sido o en adelante pueda ser sostenida por mi (nosotros), como consecuencia de accidente ocurrido el 17 de febrero de 2023*".[3]

Cinco meses después, el 24 de julio de 2023, la Apelante presentó una *Demanda*[4] en daños y perjuicios contra Óptima Seguros. El 12 de octubre de 2023, la Apelante presentó una *Demanda Enmendada*[5], a fin de incluir a la Sra. Miranda Ortíz como codemandada. Así las cosas, el 5 de octubre de 2023, Óptima Seguros presentó un *Moción de Sentencia Sumaria*[6] afirmando no ser responsable por los daños sufridos por la Apelante. El 13 de octubre de 2023, la Apelante presentó su respectiva *Oposición a Solicitud de Sentencia Sumaria*[7]. Por su parte, el 23 de noviembre de 2023, la codemandada Sra. Miranda Ortíz presentó, conjuntamente, su

---

[1] Según se desprende del Alegato de la parte Apelada, el Sr. Ramírez Figueroa es el titular del vehículo que conducía la Apelante al momento del accidente.
[2] Véase Apéndice del recurso, págs. 95.
[3] *Íd*.
[4] Véase Apéndice I del recurso, págs. 1-3.
[5] Véase Apéndice III del recurso, págs. 81-83.
[6] Véase Apéndice II del recurso, págs. 4-10.
[7] Véase Apéndice IV del recurso, págs. 84-94.

*Contestación a Demanda*, *Reconvención* y *Solicitud de la Desestimación de la Demanda*[8]. En esa ocasión, la Sra. Miranda Ortíz negó responsabilidad y presentó una acción alegando daños y perjuicios de naturaleza emocional. Así las cosas, el 29 de noviembre de 2023, la Apelante presentó una *Réplica a Reconvención*[9].

Finalmente, el 4 de diciembre de 2023, el TPI emitió una *Sentencia Parcial*[10] en la que desestimó la Demanda en lo que respecta a Óptima Seguros. Inconforme con dicha determinación, el 15 de diciembre de 2023, la Apelante presentó una *Moción en Solicitud de Reconsideración*[11]. Así las cosas, el 16 de enero de 2024, el TPI emitió una *Resolución*[12] declarando *No Ha Lugar* la solicitud de reconsideración. Inconforme, el 2 de febrero de 2024, la Sra. Ramírez Rivera presentó un recurso de Apelación ante esta Curia.

-II-

En nuestro ordenamiento jurídico la industria de seguros está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad.[13] Como resultado de lo anterior, el negocio de seguros ha sido regulado ampliamente por el Estado, principalmente mediante el Código de Seguros[14], rigiendo de manera supletoria el Código Civil[15]. El Código de Seguros reglamenta las prácticas y requisitos de esta industria.

---

[8] Véase Apéndice V del recurso, págs. 96-98.
[9] Véase Apéndice VI del recurso, págs. 99-101.
[10] Véase Apéndice VII del recurso, págs. 102-107.
[11] Véase Apéndice VIII del recurso, págs. 108-112.
[12] Véase Apéndice X del recurso, pág. 114.
[13] *Jiménez López et al. v. SIMED,* 180 DPR 1, 8 (2010) (Sentencia), citando a *SLG Francis-Acevedo v. SIMED,* 176 DPR 372 (2009); *Comisionado de Seguros v. PRIA*, 168 DPR 659 (2006); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881 (1994).
[14] Véase Ley Núm. 77 de 19 de Junio de 1957, según enmendada.
[15] *Echandi Otero v. Stewart Title,* 174 DPR 355, 369 (2008).

El Art. 1.020 del Código de Seguros, *supra*, define el contrato de seguros como aquel "*contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo*"[16]. Su función principal es la obligación de indemnizar y "*proteger al asegurado mediante el traslado del riesgo a la aseguradora si ocurre un evento específicamente pactado en el contrato*"[17]. Además, sobre dicho contrato, el Tribunal Supremo ha expresado que:

> [e]s un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento específico. **Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima.** El contrato de seguros es pues, un contrato voluntario mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de ésta [*sic*] de responder por los daños económicos que sufra el asegurado en caso de ocurrir el evento específico.[18]

Es norma reiterada que la relación entre aseguradora y asegurado es de naturaleza contractual, la cual se rige por lo pactado en el contrato de seguros y "constituye la ley entre las partes"[19]. El Código de Seguros, *supra*, establece que todo contrato de seguro debe interpretarse globalmente, a base del conjunto

---

[16] 26 LPRA sec. 102.
[17] *Rivera Matos, et al. v. ELA*, 2020 TSPR 89, 204 DPR __ (2020); *OCS v. CODEPOLA*, 202 DPR 842 (2019).
[18] *Coop. Ahorro y Créd. Oriental v. SLG*, 158 DPR 714, 721 (2003), citando a *Aseg. Lloyd & London et al. v. Cía. Des. Comercial*, 126 DPR 251, 266-267 (1990). *Énfasis suplido.*
[19] *TOLIC v. Febles Gordián*, 170 DPR 804, 812 (2007).

total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta [*sic*][20]. **"Es decir que, al interpretarse la póliza, ésta [*sic*] debe hacerse conforme al propósito de la misma, o sea, el ofrecer protección al asegurado"**[21].

En nuestro ordenamiento jurídico los contratos de seguros son considerados contratos de adhesión. Como resultado, **cuando estos contienen una cláusula confusa, la misma se interpretará liberalmente a favor del asegurado.**[22] Es decir, en caso de dudas al interpretar una póliza, éstas [*sic*] deben resolverse de modo que se alcance el propósito de la misma: en protección al asegurado.[23] No obstante, este análisis no se puede realizar de manera desenfrenada sino <u>únicamente</u> cuando se justifique y surja claramente la necesidad de interpretación. Ello, como corolario del principio básico de derecho contractual que dispone que cuando los términos y condiciones son claros, específicos y libres de ambigüedades, los mismos serán obligatorios entre las partes.[24]

-III-

De los documentos[25] que obran en autos surge que el vehículo Santa Fe Sport del año 2016 con tablilla IXC-

---

[20] Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125; *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880 (2012); *Echandi Otero v. Stewart Title, supra* a la pág. 356; *Monteagudo Pérez v. ELA,* 172 DPR 12, 20 (2007).

[21] *Coop. Ahorro y Créd. Oriental v. SLG, supra,* a la pág. 723. *Énfasis suplido.*

[22] *Quiñones López v. Manzano Posas,* 141 DPR 139, 155 (1996). *Énfasis suplido.*

[23] *Íd.*

[24] *Íd.* Véase *García Curbelo v. AFF,* 127 DPR 747 (1991).

[25] Véase Apéndice del recurso, págs. 12 y 13.

672 se encontraba asegurado por Óptima Seguros bajo la póliza VAS1053888 al momento del accidente objeto de la presente controversia. Cabe señalar que dicha póliza fue expedida a favor de la Sra. Janitza Miranda Ortíz.

Además, como parte de los documentos de la póliza, se encuentra un **_Endoso de Exclusión de Conductor de 23 años o menos_**[26]. Mediante tal endoso las partes acordaron que la cubierta provista no aplicaría a reclamaciones que surjan de accidentes mientras el vehículo asegurado sea operado por un conductor de 23 años o menos, que a su vez no esté nombrado como conductor adicional en las declaraciones de la póliza.

En el presente caso, Flores Miranda, de 17 años de edad al momento de los hechos[27], es quien conducía el vehículo que ocasionó el accidente. Cabe señalar que Flores Miranda no fue incluida en la póliza como asegurada adicional. Por lo tanto, a tenor con el endoso estipulado por las partes, la cubierta de la póliza no surte efecto alguno, toda vez que no se cumplen los requisitos acordados. Resolver de manera contraria, sería inmiscuirnos en un acuerdo bona fide al que llegaron las partes. Tal acción, no nos corresponde.

-IV-

De conformidad con los fundamentos antes expuestos, se **_confirma_** la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

_Lcda. Lilia M. Oquendo Solís_
_Secretaria del Tribunal de Apelaciones_

---

[26] Véase Apéndice del recurso, pág. 52.
[27] Véase Exhibit 3 del recurso, pág. 80.