Jordan SOTO, Plaintiff,

v.

Marvin RUNYON, Postmaster
General, Defendant.

No. Civ. 95–1201 DRD.

United States District Court,
D. Puerto Rico.

June 23, 1998.

of action, which are brought under Puerto Rico law, are precluded by federal law and barred by Plaintiff's failure to exhaust his administrative remedies. Defendant also asserts that Plaintiff cannot recover punitive damages, or compensatory damages of more than $300,000. Plaintiff disputes Defendant's arguments.

For the reasons discussed below, the Court grants Defendant's motion for summary judgment.

### I. Factual Background

Plaintiff commenced employment with the United States Postal Service in Puerto Rico on January 9, 1985. Since October 1988, Plaintiff has been employed by the Postal Service as a part-time regular distribution and window clerk in the Caribbean Field Division in San Juan. As a distribution and window clerk, Plaintiff's duties including making "primary and one or more secondary distributions of incoming mail by delivery point . . . based on a knowledge of the distribution scheme established for the office, branch, or station." (Affidavit of Iris Sánchez, dated February 23, 1998 ("Sánchez Aff."), Attachment C.) None of Plaintiff's duties included supervisory or human resources responsibilities. Plaintiff's previous positions with the Postal Service were as a Distribution Clerk and as a Mail Handler. He was twice detailed to serve as an acting finance clerk. Plaintiff received no awards or commendations for his service with the Postal Service.

In May 1994, the Postal Service in San Juan, Puerto Rico, posted a notice of vacancy for a Human Resources Associate position. Postal employees with one year of service were eligible to apply for the position. The functional purpose of the position was described as follows: "Performs staff work in support of one or any combination of the following human resources programs: labor relations, EEO complaints processing, personnel services, safety and health, injury compensation, training." A detailed description of the position lists nine duties and

Erick Morales, Carolina, PR, for plaintiff.

Fidel A. Sevillano–Del–Rio, U.S. Attorney's Office, Dist. of Puerto Rico, Civil Div., Hato Rey, PR, for defendant.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

On February 23, 1995, Mr. Jordan Soto ("Plaintiff") filed a civil action against the United States Postmaster General ("Defendant"), as his employer, for alleged violations of Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, Article 1802 of the Civil Code of 1930 (P.R.Laws Ann. tit. 31 § 5141 *et seq.*), Puerto Rico Law 100 of June 30, 1959 (P.R.Laws Ann. tit. 29 § 146 *et seq.*), and the general laws of Puerto Rico.

Pending before the Court in this suit is Defendant's motion for summary judgment, (Docket No. 13), based on two arguments. First, Defendant argues that Mr. Soto has failed to establish a prima facie case of sex discrimination. Second, Defendant argues that even if he has established a prima facie case, he has failed to rebut Defendant's articulation of legitimate, nondiscriminatory reasons for its decision not to hire Mr. Soto as a Human Resources Associate. Defendant argues that Plaintiff's second and third causes

responsibilities.[1] The knowledge, skills and abilities needed for the position were outlined in a "KSA" description sheet.[2] (Sánchez Aff., Attachment A.)

In late May 1994, Plaintiff filed an application for the Human Resources Associate vacancy. In his application, Plaintiff described his work experience, education, and other qualifications for the position. His Postal–Service education included three classes: basic training, a CTT Scanning Seminar and a supply-requisition seminar. His formal education included an undergraduate degree in history and a law degree from the Inter–American Law School. In January 1985, Plaintiff was admitted as an attorney to the bar of Puerto Rico. Plaintiff's pre-Postal Service work experience included performing clerical responsibilities with the United States military. In his application, Plaintiff suggested that he had experience in human resources-related work. He listed on his application three law school classes dealing with labor law and federal civil procedure, and described his private civil litigation practice. His typing skills were evaluated at 30 words per minute.

Ten applications were submitted for the Human Resources Associate position, six by women and four by men. One application was submitted by Irma Centeno, who was ultimately awarded the position.

At the time she made her application, Ms. Centeno worked as a Training Technician with the Postal Service. She had held this position for six and a half years. Her Training Technician responsibilities included evaluating trainee eligibility, and scheduling and coordinating trainings. While a Training Technician, Ms. Centeno was detailed to Personnel Services for a year and a half. Prior to serving as a Training Technician, she had served for four years as a personnel clerk and for three years as an automated mark-up clerk. Her details within the Postal Service included examination coordinator, training and development specialist, supervisor training, postal inspection officer, window services officer, and other customer-related positions. She had taken twenty-four Postal Service courses, including a class for examination clerks and a class on report writing for managers. Ms. Centeno had received four awards for meritorious service with the Postal Service and had received other commenda-

1. **Human Resources Associate, EAS–11**

   **Functional Purpose**
   Performs staff work in support of one or any combination of the following human resources programs: labor relations; EEO complaints processing; personnel services; safety and health; injury compensation; training.
   **Duties and Responsibilities**
   1. Reviews and processes routine and confidential reports and transactions, checking for completeness, accuracy and conformance to program guidelines.
   2. Logs, prepares, maintains and distributes routine and confidential records, forms, reports, correspondence, charts and files.
   3. Collects, tracks, and compiles confidential reporting data and statistics; maintains statistical reports and charts.
   4. Researches, responds to, and resolves questions, inquiries, requests for information, and complaints.
   5. Performs scheduling, notification, and coordination activities related to the operation of assigned programs.
   6. Requisitions, maintains and distributes program, informational and promotional materials.
   7. Provides technical guidance and information regarding the administration of assigned programs.

   8. Observes established laws, rules, regulations and policies in the administration of assigned programs.
   9. Performs other job related activities in support of human resources programs.

2. **Knowledge, Skills and Abilities (KSAs) Description Sheet**
   KSA1 Knowledge of Human Resources program in support of one or any combination of the following Human Resources programs [sic]: Labor Relations; EEO Complaints processing; Personnel Services; Safety and Health; Injury Compensation; Training.
   KSA2 Ability to communicate orally sufficiently to provide technical guidance and information regarding the administration of assigned programs.
   KSA3 Applicants must demonstrate the ability to type 30 words per minute with no more than two (2) errors by successfully completing Postal Test 713. Certificates of Proficiency are not acceptable.
   KSA4 Applicants should address their ability to speak, write in both English and Spanish languages.
   KSA5 Applicant must have or be able to obtain a valid OF–346 to operate a motor vehicle.
   KSA6 Ability to communicate in writing sufficient to prepare forms, notices, announcements and correspondence, to compile statistics, and to maintain records.

tions, such as being selected to participate in a nationwide Postal–Service study. Her typing skills were evaluated at 45 words per minute.

In June 1994, Plaintiff was advised by Ms. Iris Sánchez that a Review Committee had selected him and two other candidates for interviews. Ms. Sánchez was a senior personnel/training specialist. On June 8, 1994, Ms. Sánchez interviewed Mr. Soto and the two other candidates, Mr. José Perez and Ms. Irma Centeno, for the Human Resources Associate position. During Ms. Sánchez's interview with Plaintiff, Plaintiff "was not familiar with the duties of a Human Resources Associate." (Sánchez Aff., 9.) Ms. Sánchez selected Ms. Centeno for the position.

As of July 1994, the Human Resources staff was comprised of sixteen females and fourteen males. The Personnel Services department of the Human Resources staff was comprised of eight females and five males.

## II. Summary Judgment Standard

■ Summary judgment shall be granted where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue is genuine if it 'must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.' " *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996) (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)). All reasonable inferences from the evidence must therefore be made in favor of the nonmoving party. *Le Blanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). "An inference is reasonable only if it can be drawn from the evidence without resort to speculation." *Mulero–Rodriguez,* 98 F.3d at 672 (citing *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991)). Similarly, "[i]n this context, material means that the fact is one that might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, at the summary-judgment stage of the proceedings, "the issue before [the Court] is not whether [the plaintiff] was in fact [not hired] because of his [sex], which remains to be determined at trial, but whether the question, whether he was [not hired] because of his [sex], is genuinely contestable." *Shager v. Upjohn Co.,* 913 F.2d 398, 403 (7th Cir.1990).

## III. Summary Judgment and the *McDonnell Douglas* Burden-shifting Framework

In order to survive a motion for summary judgment, the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework requires that the plaintiff establish a prima facie case "by showing by a preponderance of the evidence that: 1) the plaintiff is within a class protected by Title VII; 2)[he] applied for and was qualified for the position for which the employer was seeking a replacement; 3) despite [his] qualifications, [he] was rejected; and 4) after [his] rejection, the position was filled by a person not within the protected class." [3] *Rossy v. Roche Prods.,* 880 F.2d 621, 625 (1st Cir.1989) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). "As the very name 'prima facie case' suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.' " *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981)).

By establishing a prima facie case of sex discrimination, the plaintiff creates a rebuttable presumption that the employer discriminated on the basis of sex. However, to rebut this presumption, "the burden shifts to the defendant 'to articulate some legitimate, non-discriminatory reason for the employee's re-

---

**3.** Plaintiff could short-circuit this process by providing direct evidence of discrimination. *See*

*Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

jection.'" *Ramos v. Roche Prods.,* 936 F.2d 43, 47 (1st Cir.1991) (citing *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (citation omitted)). The employer's burden is one of production, not persuasion. It must articulate a valid reason for its decision but cannot be held to the "almost impossible burden of proving 'absence of discriminatory motive.'" *Menard v. First Sec. Servs. Corp.,* 848 F.2d 281, 287 (1st Cir.1988) (quoting *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987) (citations omitted)). At this stage, the court's role is "not to second-guess the business decisions of an employer, imposing [the court's] subjective judgments of which person would best fulfill the responsibilities of a certain job." *Rossy,* 880 F.2d at 625.

Once the employer has articulated a sufficient reason, the burden shifts back to the plaintiff. The plaintiff's "ultimate burden [is] to show that [the defendant's] reason for choosing [the hired employee] was pretext for underlying discriminatory motives." *Id.* The plaintiff is required to do more than simply refute or cast doubt on the employer's rationale. The First Circuit has traditionally required evidence that "is not only minimally sufficient evidence of pretext, but that overall reasonably supports a finding of discriminatory animus." *LeBlanc,* 6 F.3d at 842.

■ One way in which a plaintiff may provide indirect evidence of discriminatory animus is by making two logically independent but· factually related showings: first, that the legitimate nondiscriminatory reason for not hiring a plaintiff articulated by the employer was merely pretextual, and second, that the pretextual reason was likely a cover for a discriminatory reason. *See Mulero– Rodriguez,* 98 F.3d at 673.

■ At the summary judgment stage, then, the plaintiff opposing summary judgment on the sex discrimination claims normally need only provide competent evidence as to the elements of his prima facie case as well as of his claim that the defendant's proffered reasons were pretextual. If the plaintiff so provides, he shall have created a genuine issue of material fact insofar as a

reasonable jury *could* find that the very fact that the defendant provided a pretextual reason for the not hiring the plaintiff, together with the facts establishing the plaintiff's prima facie case, were sufficient to convince them that the real reasons for the employment actions were discriminatory.

## IV.   Case Analysis

### A.   Plaintiff's Prima Facie Case

■ In this case, the Court finds, contrary to Defendant's contention, that Plaintiff has made out a prima facie case of sex discrimination. First, Plaintiff has established that he is a male allegedly discriminated against by an employer who favors females. Although females are more commonly thought of as victims of sex discrimination, it is possible for a male, under certain circumstances, to allege a case of discrimination such that he is a member of a protected class under Title VII.[4] Second, Plaintiff has established that he applied for the position and that he was qualified for the position. The Court has before it the position descriptions and the applications of Ms. Centeno and Mr. Soto. Based on these documents, Mr. Soto appears qualified to serve as a Human Resources Associate. Additionally, because the Review Committee evaluated these documents to find that Mr. Soto should be interviewed for the Human Resources Associate position, the Court follows the judgment of the Review Committee that, on paper, Plaintiff met the qualifications necessary for the Human Resources Associate position. Third, Plaintiff was rejected from the position. Fourth, the position was filled by Ms. Centeno who, as a female, was not a member of the protected class in this lawsuit. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

### B.   Defendant's Reasons for Not Selecting Plaintiff

■ Because Plaintiff has made out a prima facie case of sex discrimination, the burden shifts to the Postal Service to provide a

---

**4.** The protections of Title VII extend to members of both sexes. *See Oncale v. Sundowner Offshore Servs., Inc.,* —— U.S. ——, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998); *Petitti v. New England Telephone & Telegraph Co.,* 909 F.2d 28, 29 (1st Cir.1990).

legitimate, nondiscriminatory reason for having selected Ms. Centeno for the Human Resources Associate position rather than Plaintiff. "Courts may not sit as super personnel departments, assessing the merits or even the rationality of employers' nondiscriminatory decisions." *Mesnick v. General Electric Co.*, 950 F.2d 816, 825 (1st Cir.1991). A defendant need not persuade the court that it was actually motivated by the proffered reason. The explanation provided simply must be legally sufficient to justify a judgment in its favor. *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1335 (1st Cir. 1988).

The Selecting Officer, Ms. Sánchez, stated in an affidavit that she "selected Irma Centeno for the position because she had held various assignments in Human Resources since 1984, including personnel clerk and training technician. Prior to the date of her selection for this position, she was assigned to tasks including recruitment, testing and hiring, similar or equivalent to the duties to be performed in the position advertised." (Sánchez Aff., ¶ 5.) "The successful applicant, Ms. Centeno, had recent experience in the position. Given her experience, *including 10 years in various Human Resources functions,* I believed she was the best qualified for the position." (Sánchez Aff., ¶ 10 (emphasis added).) This is a reasonable, nondiscriminatory reason for hiring Ms. Centeno, rather than Plaintiff, as a Human Resources Associate.

### C. Plaintiff's Lack of Evidence of Defendant's Pretext

■ Because Defendant has articulated a legitimate, nondiscriminatory reason for choosing Ms. Centeno, rather than Plaintiff, the burden shifts back to Plaintiff. Plaintiff must present sufficient evidence of pretext. In this case, Plaintiff submitted no documents or evidence to the Court to rebut the documents provided by Defendant in support of Defendant's motion for summary judgment.

■ Plaintiff offers two reasons why Defendant's explanation that the Postal Service hired Ms. Centeno to serve as a Human Resources Associate is pretextual. First, Plaintiff argues that the "race was fixed" because Ms. Centeno had significant experience in the open position because she had been detailed to work in Human Resources. (Docket 14, at 6.) It is possible for a plaintiff to base a discrimination case on grounds that members of a favored class are "groomed" for certain positions so that only those members can adequately fill an open position. *See, e.g., Cuello–Suarez v. Puerto Rico Electric Power Auth.*, 988 F.2d 275, 277 (1st Cir.1993). In this case, Ms. Centeno was not groomed for the Human Resouces Associate position. Even omitting her direct experience with the Human Resources office (the alleged "grooming" experience), Ms. Centeno still had significantly more relevant experience than Plaintiff. Ms. Sánchez took into consideration this long history of relevant service when choosing Ms. Centeno to fill the open position. (Sánchez Aff., ¶ 10.) It is beyond reasonable belief, and Plaintiff offers no evidence in support of the claim, that Ms. Centeno was chosen more than ten years ago to be groomed for the position of Human Resources Associate.

After noting that Ms. Sánchez chose Ms. Centeno because she had more than ten years of relevant experience, Plaintiff himself stated in his memorandum in opposition to Defendant's motion for summary judgment, "A preselection had indeed occurred since plaintiff had never had recent experience or performed similar or equivalent duties of the position." (Docket No. 14, at 6–7.) This statement advances Defendant's case, not Plaintiff's, because it suggests that Defendant did in fact choose the most qualified candidate. In his brief, Plaintiff stated, "However, the issue is not one of qualification." (Docket No. 14, at 5.) To the contrary, Defendant is legally permitted to choose the applicant with the best qualifications.

Second, Plaintiff contends that the Postal Service failed to follow its own procedures that governed the hiring process for the Human Resources vacancy. Plaintiff suggests that Ms. Centeno was not eligible for the position of Human Resources Associate because Postal Regulation § 544.822 requires that if a person is an applicant for a position and holds that position in a higher-level temporary assignment, the higher-level assign-

ment must be terminated before the person has held the position for 61 days. (Docket No. 14, at 7.) Plaintiff argues that the misapplication of this rule proves that he was treated less favorably than a comparable female employee.[5]

The exact application of Regulation § 544.822 to the present situation is not clear from the record. It is unclear whether Ms. Centeno in fact had a higher-level assignment as a human resources associate. It is also unclear how the higher-level assignment could have been properly terminated before the 61st day if Ms. Centeno was assigned to a relevant position when Ms. Centeno applied for the Human Resources Associate position and the position was filled in less than 61 days. The Postal Service has not provided proof that it adhered to this rule. In any case, even if the Court accepts that Plaintiff might be able to raised a genuine issue of fact as to whether Defendant violated the relevant regulation, this alleged violation does not evidence discrimination. A violation of an agency rule does not by itself evidence discrimination. *See Johnson v. Runyon*, 928 F.Supp. 575, 583–84 (D.Md.1996) (Postal Service's possible failure to follow Postal Service Regulation § 544.822 was not evidence of discrimination).

Plaintiff raises no other opposition to Defendant's demand for summary judgment. For completeness, the Court looks to Plaintiff's complaint to determine if the complaint contains any allegations that can withstand Defendant's motion for summary judgment.

In Plaintiff's complaint, Plaintiff states that Ms. Centeno did not have the necessary qualification to work as a Human Resources Associate. (Complaint, ¶ 18b.) This allegation is not supported by the record. Ms. Centeno's application for the position indicates that she had the necessary qualifications, (Sánchez Aff., Attachment D). Her selection for an interview by the Review Committee supports this reading of her application.

In his complaint, Plaintiff further asserts that Ms. Sánchez pre-selected Ms. Centeno for the position and was biased in favor of Ms. Centeno. These allegations are not supported by the record. In the first instance, Ms. Sánchez did not choose the initial candidates for the interview for the position. Instead, a Review Committee selected the three candidates to be interviewed by Ms. Sánchez. They chose two male candidates and one female candidate. The record contains no evidence that Ms. Sánchez had any influence over the hiring selection before interviewing the three candidates. When asked if Ms. Centeno had said anything in her deposition to suggest that she had been preselected, Plaintiff stated, "No, I'm making that inference." (Deposition of Jordan Soto, March 7, 1996 ("Soto Dep."), at 34.) Plaintiff was then asked, "Did anybody say anything to you to indicate that she was pre-selected for the June 1994, position?" Plaintiff again stated, "It's my own inference." (Soto Dep., at 35.) [6]

---

**5.** Plaintiff has not alleged a claim that the Postal Service failed to follow its own regulations as a separate basis for relief. *See, e.g., Harper v. Frank*, 985 F.2d 285, 289 (6th Cir.1993).

**6.** During his deposition, Plaintiff stated that he did not have information about Ms. Centeno and others because Defendant did not provide requested information. *See, e.g.,* Soto Dep., at 22, 53–55. Plaintiff suggested that he could obtain the information later in these proceedings. This Court has received no motions by Plaintiff to compel Defendant to produce the allegedly missing discovery responses. The Court need not deny this summary judgment motion and allow Plaintiff the opportunity to develop his case at trial when the tools were before him to develop a submissible case through discovery, including depositions and document production. "[S]peculation and surmise, even when coupled with

effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir.1996). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz*, 896 F.2d at 8. *See also Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir.1995) (in employment discrimination case, plaintiff's "unsupported assertion that a full trial offers [him] a better opportunity to establish a submissible case fails to justify exempting employment discrimination cases from summary judgment procedures").

Later in his complaint, Plaintiff alleges that Defendant maintains "a policy of channeling women, but not men, into the Human Resources positions, regardless of their qualifications." (Complaint, ¶ 24(d).) In his deposition, Plaintiff suggested that women rotate through the human resources department so that they are qualified for human resources jobs when openings arise. (Soto Dep., at 33.) This policy, even if it existed, had no effect on Defendant's choice of Ms. Centeno rather than Plaintiff for the Human Resources Associate vacancy. The selection of Ms. Centeno was based on her ten years of experience in personnel-related services, not just on her experience in any specific position. Even discounting Ms. Centeno's experience in Personnel Services, she would still have been more qualified for the position than Plaintiff, as stated in Ms. Sánchez's affidavit. (Sánchez Aff., at ¶ 5.) As no other women competed against Plaintiff at the interview stage, any other woman's prior experience in human resources was irrelevant to the hiring decision as to Plaintiff. Moreover, Plaintiff has produced no evidence that women primarily occupied the allegedly rotating human resources positions.

Plaintiff further alleges that Defendant "[i]ntentionally discriminated against Plaintiff by providing a system of selection which maintains practices and policies of discrimination in employment on the basis of sex," and "[i]ntentionally permit[ed] [sic] a Selecting Officer to discriminate against Plaintiff by allowing said officer to violate the rules and regulations of the Postal Service." (Complaint, ¶ 24d, e.) Again, the record contains no evidence in support of Plaintiff's allegations.

During his deposition, Plaintiff suggested that Ms. Sánchez favored Ms. Centeno be-

cause Ms. Sánchez asked Plaintiff during his interview what the duties of the Human Resources position were. Plaintiff suggests that he had no way of answering this question because he had not previously held the position for which he applied. During his deposition, Plaintiff was unable to explain why a question about a position's responsibilities was inappropriate or violated any Postal Service Regulation. (Soto Dep., at 56–60.) It is not evident to the Court why actually working in the Human Resources Department was necessary to answer this question. The fact that Ms. Sánchez asked this question does not indicate that Ms. Sánchez favored Ms. Centeno because she was a woman.

■ Plaintiff's complaint suggests that the Postal Service has a disparity in hiring men and women in human resources positions. This is belied by the fact that as of July 1994, the Human Resources staff was comprised on sixteen females and fourteen males.[7] The Personnel Service department of the Human Resources staff comprised eight females and five males. In any case, in a disparate treatment case such as this one, statistical evidence, "in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision" not to hire an employee. *LeBlanc*, 6 F.3d at 848. The flaws in Plaintiff's proffer of these statistics are evident, the primary one being that without information about the qualifications of the applicants, the Court has no way of knowing whether these statistics suggest that men were discriminated against in Postal Service hiring. Without any evidence regarding the qualifications of these individuals, the fact that the departments have slightly fewer males than females as employees does not suggest discrimination in favor of females.[8]

---

7. During his deposition, Plaintiff stated, "Well, I know for a fact that it's all females working as human resources associates, or specialists, in the human resources section." (Soto Dep., at 91.) Plaintiff provided no additional information about these women, or any evidence that this statement was correct.

8. In his deposition, Plaintiff alleges that women were also favored in the selection process for positions other than the position as to which

Plaintiff brings the instant action. (Soto Dep., at 12.) Plaintiff also alleged during his deposition that a Ms. Carmen Herrera was favored over him because she was receiving EEO counseling training. (Soto Dep., at 28.) Again, Plaintiff's claims of discrimination are unsubstantiated. Because these allegations do not form the basis of this lawsuit, the Court makes no determinations as to these allegations raised during Plaintiff's deposition. (Soto Dep., at 12–24.)

■ The conclusory allegations made in Plaintiff's complaint and memorandum of law in opposition to Defendant's motion for summary judgment fail to provide any factual basis to conclude that the reason proffered by Defendant was pretextual or was animated by discriminatory motives. *See* Fed. R.Civ.P. 56(e) ("party may not rest on mere allegations"); *Roche*, 81 F.3d at 253; *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir.1995); *Medina–Munoz*, 896 F.2d at 8. This failure is fatal to Plaintiff's case. We hold that summary judgment is properly granted to Defendant because Plaintiff failed to present any evidence to support a finding that the Postal Service's proffered reason was a pretext for sex discrimination. Mr. Soto had to proffer specific facts to enable the Court to find that the reason given "is not only a sham, but a sham intended to cover up the employer's real motive: [sex] discrimination." *Mesnick*, 950 F.2d at 824 (citing Medina–Munoz, 896 F.2d at 9). The burden of persuasion, as opposed to the burden of production, rests with the Plaintiff throughout. *Serrano–Cruz*, 109 F.3d, at 26. Plaintiff has failed to carry his burden.

### V. The Local Law Claims

The Court has already determined that Plaintiff may not bring Puerto Rico law claims in this action. (Docket No. 12.) Employment relations within the Postal Service are generally governed by the provisions of the Postal Reorganization Act ("PRA"). 39 U.S.C. §§ 1001–11 (1998). The PRA incorporates a portion of the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7501–43 (1998), relating to adverse employment actions by Postal Service employees. The CSRA permits federal employees to challenge prohibited personnel practices, including appointments and promotions. 5 U.S.C. § 2302 (1998). "This scheme for review of adverse employment decisions is the type of narrowly tailored employee compensation scheme' that the Supreme Court has held 'pre-empts the more general tort recovery statutes.'" *American Postal Workers Union (AFL–CIO) v. United States Postal Service*, 940 F.2d 704,

709 (D.C.Cir.1991) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976)).

■ "Residual statutes aimed as specific harms, like the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964, by their terms supplement the PRA." *American Postal Workers*, 940 F.2d at 708 (citations omitted). Title VII provides specific protection from discrimination for Postal Service employees: "All personnel actions affecting employees or applicants for employment ... in the United States Postal Service ... shall be made free from any discrimination based on race, color, religion, sex or national origin." 42 U.S.C.A. § 2000e–16(a) (1994 and Supp.1998). Title VII provides the exclusive judicial scheme to provide redress for workplace discrimination suffered in federal employment by Postal Service workers. *See Brown*, 425 U.S. at 828, 96 S.Ct. at 1966. Plaintiff's second and third causes of action which are brought under Puerto Rico law arise from the alleged discrimination by the Postal Service in not hiring him as a Human Resources Associate. As these claims are based solely on events which occurred in connection with Plaintiff's federal employment, Plaintiff's state law claims are preempted by federal law.

■ No other federal scheme provides relief. Federal employees alleging employment-related torts subject to the CSRA may not bring actions under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 2671–26800 ("FTCA").[9] *See Kennedy v. U.S. Postal Service*, 145 F.3d 1077, 1078 (9th Cir. 1998). Even if Plaintiff could bring his claims under the FTCA, he is ineligible to do so. The FTCA is the exclusive remedy for tort actions against a federal agency when no other statute provides relief. *See* 28 U.S.C. § 2679(a) (1998). Only the United States is a proper defendant in an FTCA action. *See Kennedy*, 145 F.3d at 1078 ("A claim against the United States Postal Service in its own name is not a claim against the United States."). Plaintiff has sued the Postmaster

---

9. Even if Plaintiff had recourse to any federal scheme beyond Title VII, he would have to address potential coverage of the Federal Employee's Compensation Act, 5 U.S.C. § 8101 *et seq.* (1998), before seeking relief under the FTCA.

General, rather than the United States; thus Plaintiff has failed to sue the proper party for an FTCA claim. Additionally, Plaintiff's failure to exhaust his administrative remedies under the FTCA bars his claims against the United States of America. Plaintiff's failure to file an administrative claim with the United States Postal Service within two years of the accrual of his cause of action bars any subsequent suit on such a claim. 28 U.S.C. §§ 2401(b), 2675(a) (1998). *See Gonzalez–Bernal v. United States,* 907 F.2d 246, 248 (1st Cir.1990).[10]

### VI. Conclusion

The Court finds that Mr. Soto has failed to establish that he was discriminated against on the basis of sex under Title VII. His Puerto Rico law claims are preempted. The complaint is therefore dismissed.

IT IS SO ORDERED.

---

**10.** Defendant claims that even if Plaintiff succeeds with his case, he cannot recover punitive damages. 42 U.S.C. § 1981a(b)(1) (1998). Defendant also claims that Plaintiff cannot recover compensatory damages in an amount greater than $300,000.00. 42 U.S.C. § 1981a(b)(3)(D) (1998). *See Kerr–Selgas v. American Airlines,* *Inc.,* 69 F.3d 1205, 1209 (1st Cir.1995). Defendant is correct. Were this action to continue beyond the summary judgment stage, Plaintiff could not recover punitive damages and his compensatory damages would be limited to a maximum amount of $300,000.