**Elena Pagan SAN MIGUEL, Plaintiffs,**

**v.**

**NECSO REDONDO, S.E., Redondo Entrecanales, S.E., American International Insurance Company of PR, Inc., Defendants.**

**No. Civ. 04–1051JAF.**

United States District Court, D. Puerto Rico.

June 9, 2005.

Manuel Duran–Rodriguez, Manuel Duran Law Office, San Juan, PR, for Plaintiffs.

Carmen Lucia Rodriguez–Velez, Pedro J. Manzano–Yates, Fiddler Gonzalez & Rodriguez, P.S.C., Hato Rey, PR, Hector F. Oliveras–Delgado, Jeannette M. Lopez, Pinto–Lugo, Oliveras & Ortiz, PS, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTÉ, Chief Judge.

Plaintiff, Elena Pagán San Miguel, filed the present complaint against Defendants

Necso Redondo, S.E., Redondo Entrecanales, S.E., and American International Insurance Company of Puerto Rico, Inc. ("AIICO") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e and 2000e–3 (2003 & Supp.2004); 29 P.R. Laws Ann. §§ 194–194b (2001) ("Puerto Rico Law No. 115"); 29 P.R. Laws Ann. § 185 et seq. (2001) ("Puerto Rico Law No. 80"); 29 P.R. Laws Ann. § 146 (2001) ("Puerto Rico Law No. 100"); and 29 P.R. Laws Ann. §§ 1321–1341 (2001) ("Puerto Rico Law No. 69"). *Docket Document No. 1.*

Defendant Necso/Redondo moves for summary judgment, *Docket Document No. 20,* and Plaintiff opposes the motion. *Docket Document No. 40.* Defendant AIICO also moves for summary judgment, *Docket Document Nos. 29, 77, 78,* and Plaintiff and Defendant Necso/Redondo oppose the motion. *Docket Document Nos. 55, 58.* Upon careful review of the pleadings, the submitted evidence, and applicable case law, we grant in part and deny in part Defendant AIICO's motion and grant in part and deny in part Defendant Necso/Redondo's motion.

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the complaint and the statements of facts submitted by the parties in their summary judgment and opposition motions. *Docket Document Nos. 21, 31, 40, 55, 57, 65, 79, 80.*

Plaintiff is a Puerto Rico resident and former employee of Defendants Necso Redondo, S.E. and Redondo Entrecanales, S.E.

Defendant Necso Redondo ("NR") was a partnership formed between Necso Entrecanales Cubiertas ("NEC"), a Spanish company, and Consorcio Redondo Construction ("CRC"), a Puerto Rican company. The managing partner of NR was NEC. NR was incorporated under Puerto Rico law to contract with the Puerto Rico Government to construct five Hato Rey Stations of the Tren Urbano Project including: Sagrado Corazón, Nuevo Centro, Roosevelt, Domenech, and Piñero (Judicial Center). One administrative office serviced the five stations.

Redondo Entrecanales ("RE") was a second partnership formed between the same parent companies. The managing partner of RE was CRC. RE was incorporated to construct three stations of the Tren Urbano Project: Centro Médico, Río Bayamón, and Villa Nevarez. RE had an administrative office in each of the three stations under its contracts.

On March 20, 2000, NEC bought CRC's share in the partnership of each company. NR and RE were "single employers" for the purpose of Plaintiff's complaint and will be referred to jointly as "Defendant Necso/Redondo."

Defendant AIICO was Defendant Necso/Redondo's insurer from April 22, 2002, to April 22, 2003.

Plaintiff began working for Defendant Necso/Redondo on June 18, 2001, as a clerk in the Hato Rey Project Administrative Office. In July 2001, Juan Luis Bustamante began working for Defendant Necso/Redondo as the Project Administrative Manager in the Hato Rey office.

In August 2001, Plaintiff arrived at work to find approximately twenty pages of pornographic material left in the printer dock. According to Plaintiff's allegations, Bustamante was the only person besides her with access to the computer. She believed that he was responsible for leaving the pornographic material in the printer, and

reported the incident to the Human Resources director, Rosa Nieves.

Approximately two months later, in October 2001, Plaintiff overheard Bustamante, a Colombian citizen, refer to his coworkers, and Puerto Rican women in general, as a "bunch of prostitutes." Plaintiff reported the incident to Nieves, who relayed the report to Jacinto Piris, the controller and administrative manager of NR's Hato Rey Project. Soon thereafter, Plaintiff was relocated to the Río Bayamón Administrative Office. Deliana Vélez, the clerk at the Río Bayamón administrative office, was relocated to the Hato Rey project.

At the Río Bayamón office, Plaintiff worked alongside Aris Trinidad, a Puerto Rican woman. Within two weeks of joining the new project, Plaintiff heard Piris, a Spanish citizen, make offensive, threatening comments to Trinidad, saying that she "should not exist," and was a "dumb Puerto Rican." Over the course of the following four months, several incidents occurred wherein Piris lashed out at Trinidad and/or Plaintiff, calling them "stupid," denigrating their Puerto Rican origins, and making physically-threatening gestures. During an incident on or about January 31, 2002, Piris grabbed Trinidad's arm. As a result, Trinidad filed a police complaint against Piris. Piris returned without incident to the Río Bayamón office once or twice over the next four months.

On May 16, 2002, Plaintiff filed a discrimination complaint with the Puerto Rico Department of Labor's Anti–Discrimination Unit and the Equal Employment Opportunity Commission ("EEOC"), and delivered a copy of the charge to Nieves' office. Four days later, on May 20, 2002, Plaintiff was terminated. The Río Bayamón office closed two months later because the project had reached completion.

Plaintiff filed the present complaint on January 27, 2004, alleging gender and national origin discrimination and retaliatory discharge. *Docket Document No. 1.* Plaintiff seeks injunctive relief, back pay, and compensatory, punitive and liquidated damages. *Id.*

On December 23, 2004, Defendant Necso/Redondo moved for summary judgment. *Docket Document No. 20.* On January 21, 2005, Plaintiff filed an opposition to the motion. *Docket Document No. 40.* Defendant Necso/Redondo filed a reply on February 14, 2005. *Docket Document No. 66.*

Defendant AIICO filed a separate motion for summary judgment on January 3, 2005. *Docket Document No. 29.* On January 27, 2005, Plaintiff filed an opposition. *Docket Document No. 55.* On January 28, 2005, Defendant Necso/Redondo also filed a motion in opposition to Defendant AIICO's summary judgment motion. *Docket Document No. 58.* On March 4, 2005, Defendant AIICO filed a separate reply to each opposition. *Docket Document Nos. 77, 78.*

## II.

### *Summary Judgment Standard Under Rule 56©*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. A factual dispute is "genuine" if it could be resolved in either party's favor, and "material" if it potentially affects the case's outcome. *Calero–Cerezo v. United States*

*Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the burden "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *See id.* at 325, 106 S.Ct. 2548. The burden has two components: (1) an initial burden of production that shifts to the non-moving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *See id.* at 331, 106 S.Ct. 2548.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### Analysis

#### A. *Defendant AIICO's Summary Judgment Motion*

Defendant AIICO moves for summary judgment on the grounds that the Financial Lines Employment Practices Liability Policy ("EPL") created a duty to indemnify Defendant Necso/Redondo, but not a duty to defend Defendant Necso/Redondo. *Docket Document No. 29.* Defendant AIICO also asserts that the insurance contract issued to Defendant Necso/Redondo does not extend coverage over Plaintiff's claims. *Id.*

#### 1. *Defendant AIICO's Duty to Defend*

■ Defendant AIICO first argues that the EPL terms do not create a duty to defend and, therefore, summary judgment is appropriate. *Docket Document No. 77.* Defendant Necso/Redondo agrees with this interpretation, but insists that we should deny Defendant AIICO's summary judgment motion because Defendant AIICO's duty to indemnify depends upon facts established at trial. *Docket Document No. 58.*

We find Defendant AIICO's assertion has no bearing on its liability under state law. Under Puerto Rico law, "[a]ny individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy. . . ." 26 P.R. LAWS. ANN. § 2003; *see de Leon Lopez v. Corporación Insular de Seguros,* 742 F.Supp. 44, 47 (D.P.R.1990) (citing *Garcia v. N. Assurance Co.,* 92 P.R.R. 326, 1965 WL 14310 (1965)). That is to say, Puerto Rico law creates a substantive claim against an insurer separate and distinct from any claim that a plaintiff may have against an insured. *De Leon Lopez v. Corporación Insular de Seguros,* 931 F.2d 116, 122 (1st Cir.1991). Thus, Plaintiff has a right to sue Defendant AIICO directly for any claims covered by the insurance policy. *See Garcia v. Northern Assurance Co.,* 92 P.R.R. 236, 246, 1965 WL 14310 (1965) (holding that the injured has a cause of action and a right of action against the insurer when he has a right of action and cause of action against an insured); *see also Ramos v. Cont'l Ins. Co.,* 493 F.2d 329, 331 (1st Cir.1974) (holding that the Puerto Rico direct action statute allows the injured to bring a separate cause of action against the insurer); *Fraticelli v.*

*St. Paul Fire & Marine Ins. Co.*, 375 F.2d 186, 188 (1st Cir.1967) (same); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 789 F.Supp. 1212, 1217 (D.P.R.1992); *Reyes–Lopez v. Misener Marine Const. Co.*, 854 F.2d 529, 530 n. 2 (1st Cir.1988) ("Under 'liability insurance' policies ... the insurer is liable only if its insured would be liable.") (citing 12 *Couch on Insurance* § 45:28). Ultimately, the duty to defend debate is between Defendant Necso/Redondo and Defendant AIICO. It is inapposite, however, to determining Plaintiff's claims against Defendant AIICO.

### 2. *The Prior Acts Endorsement*

■ Defendant AIICO's second argument, whether the EPL covers Plaintiff's claims, provides the appropriate legal context within which to analyze Defendant AIICO's summary judgment motion.

Under the Puerto Rico Insurance Code, an insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached ... to the policy." 26 P.R. LAWS ANN. § 1125; *PFZ Props., Inc. v. Gen. Accident Ins. Co.*, 136 D.P.R. 881, 902 (1994). When interpreting a contract, contract clauses and provisions should be read in relation to one another, giving to those that are unclear the meaning which arises from considering all the clauses together. 31 P.R. LAWS ANN. § 3475. Terms should be assigned their common meanings, and any term having multiple meanings should be read in the sense most suitable to give it effect. 31 P.R. LAWS ANN. § 3474.

■ Under Puerto Rico law, when a policy's terms, conditions, and exclusions are unambiguous, they must be enforced according to the parties' will. *Quiñones Lopez v. Manzano Pozas*, 141 D.P.R. 139, 156 (1996). Absent an ambiguity, the con-

tract terms bind the parties. *Garcia Curbelo v. A.F.F.*, 127 D.P.R. 747 (1991).

The EPL policy, covering the period from April 22, 2002, through April 22, 2003, with a continuity date of April 22, 2002, included an endorsement entitled "Prior Acts Endorsement" that reads as follows:

> In consideration of the premium charged, its [sic] understood and agreed that this policy only provides coverage for Loss arising out of claims for alleged Wrongful Acts occurring on or after *APRIL 22, 2002* and prior to the end of the Policy Period and otherwise covered by this policy. Loss(es) arising out of the same or related Wrongful Act(s) shall be deemed to arise from the first such same or related Wrongful Act.

*Docket Document No. 31, Exh. 1.* On May 16, 2002, Plaintiff filed a complaint with the EEOC, alleging discriminatory acts that occurred between August 2001 and January 31, 2002. *Docket Document Nos. 21; 31, Exh. 2.* Because the alleged discrimination took place on or before January 31, 2002, Defendant AIICO contends that Plaintiff's losses "aris[e] out of the same or related Wrongful Act(s)" occurring before April 22, 2002, and, therefore, are not covered by the insurance policy. *Docket Document No. 29.*

Defendant AIICO argues that Plaintiff's claims arise out of a course of conduct that began in August 2001 and, therefore, are related Wrongful Acts that predate the insurance policy. *Docket Document No. 29.* Both Plaintiff and Defendants counter that Plaintiff's claims of discrimination and retaliation are not identical and arise out of distinct acts. *Docket Document Nos. 55, 58.* We agree with the latter view.

The alleged acts that form the basis of Plaintiff's gender and national origin discrimination claims occurred between Au-

gust 2001 and January 31, 2002. *Docket Document Nos. 55, 58.* No discriminatory acts took place after that date. Thus, the allegations of discrimination arose out of the same or related Wrongful Acts that occurred before the commencement of the EPL policy's coverage on April 22, 2002. Because all acts of discrimination occurred before April 22, 2002, and because the contract terms clearly exclude such acts from the EPL's coverage, Defendant AIICO is not liable for damages that allegedly resulted from those illegal acts. Accordingly, we grant Defendant AIICO's motion for summary judgment as to the claims of gender and national origin discrimination for events occurring between August 2001 and January 31, 2002.

■ We hold differently, however, as to the allegation of retaliatory termination. Plaintiff's complaint asserts that on May 16, 2002, Plaintiff filed an EEOC complaint against Defendants, on May 20, 2002, she was terminated, and that there was a causal connection between these two events. *Docket Document No. 1.* According to the complaint, the retaliation claim arises from two events in May 2002, and, thus, arises from events that occurred after the commencement of the EPL policy period. *Id.* Therefore, we deny Defendant AIICO's summary judgment motion with regard to the Plaintiff's retaliation claim.

## B. *Title VII Claims*

Defendant Necso/Redondo moves for summary judgment on the grounds that Plaintiff: 1) has failed to make a prima facie showing of gender or national origin discrimination; 2) has failed to establish that Defendant Necso/Redondo harbored a hostile work environment; and 3) cannot prove that Defendant Necso/Redondo terminated Plaintiff in retaliation for Plaintiff's EEOC filing. *Docket Document Nos. 20, 66.*

■ When considering claims of discrimination under Title VII, we apply the *McDonnell Douglas* burden-shifting framework. The *McDonnell Douglas* standard requires that a plaintiff set forth a prima facie case by showing that: (1) he is within a protected group; (2) he met the employer's legitimate job performance expectations; (3) he experienced an adverse employment action; and (4) the employer had a continuing need for the Plaintiff's services and replaced him with a person of roughly the same qualifications. *Williams v. Raytheon Co.,* 220 F.3d 16, 18 (1st Cir. 2000); *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir. 1993); *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988). "[A] discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. Rather, [a] person is replaced only when another employee is hired or reassigned to perform plaintiff's duties." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 846 (1st Cir.1993); *see also Hidalgo v. Overseas Condado Ins. Agencies,* 120 F.3d 328, 334 n. 6 (1st Cir.1997).

If the plaintiff either produces direct evidence of discrimination or establishes a prima facie case, there is a presumption that the employer unlawfully discriminated against him. *González v. El Día, Inc.,* 304 F.3d 63, 68–69 (1st Cir.2002); *Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000). The burden of production then shifts to the employer-defendant, who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *Domínguez–Cruz,* 202 F.3d at 430; *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993). If the

employer meets this burden, the inference of unlawful discrimination is dispelled, and the burden shifts to the plaintiff to show that the employer's alleged justification is a pretext for discrimination. *Vega*, 3 F.3d at 479; *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991). At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and must show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Mesnick*, 950 F.2d at 825. The plaintiff must prove that he would not have suffered the adverse employment action but for his belonging to the protected class. *See Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 348 (1st Cir.1998). Thus, federal law "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." *Freeman*, 865 F.2d at 1341.

### 1. Transfer as Gender or National Origin Discrimination

■ Plaintiff claims that her transfer from the Hato Rey office to the Rio Bayamón office was a discriminatory act that she suffered as a result of being a Puerto Rican woman. *Docket Document No. 40.* As proof, Plaintiff alleges that she was within a protected group, she met all job expectations, the transfer was an adverse employment action, and she was replaced by Bustamante, a Colombian male. *Id.*

We are convinced, however, as Defendant Necso/Redondo explains, that Deliana Vélez, a Puerto Rican woman, and Plaintiff, merely switched positions. *Docket Document Nos. 66; 85, Exh. 2.* Bustamante was already working at Hato Rey, occupying the position of "Project Clerk,"

while both Plaintiff and Vélez were "clerks." *Docket Document No. 85, Exh. 2.* Bustamante did not replace Plaintiff. Vélez did. Because Plaintiff was replaced by a Puerto Rican female, a member of the same protected class, Plaintiff cannot establish the fourth element of the *McDonnell Douglas* prima facie case. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (citing *Texas Dep't of Comty Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Rossy v. Roche Prods.*, 880 F.2d 621, 625 (1st Cir.1989) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817); *Soto v. Runyon*, 13 F.Supp.2d 215, 219 (D.P.R.1998) (stipulating that a plaintiff must show that after his rejection, the position was filled by a person not within the protected class). Thus, Plaintiff cannot establish a claim of gender or national discrimination with regard to her transfer from Hato Rey to Río Bayamón.

### 2. Hostile Work Environment Claim

■ Plaintiff alleges that Defendant Necso/Redondo discriminated against her by creating a hostile work environment. *Docket Document No. 1, 40.* Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2.

Defendant Necso/Redondo argues that Plaintiff was not subjected to a hostile work environment because the alleged incidents were isolated and infrequent. *Docket Document No. 66.*

■ A hostile work environment violates Title VII "[w]hen the workplace is permeated with discriminatory intimi-

dation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and quotation marks omitted); *Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir.2003). Though there is no "mathematically precise test" to determine whether Plaintiff presented sufficient evidence that she was subjected to a hostile work environment, *Harris*, 510 U.S. at 21, 114 S.Ct. 367; *Kosereis*, 331 F.3d at 216, the pattern of conduct complained of must be "(1) characterized by intimidation, ridicule and insult, not just minor unpleasantness or criticism, (2) offensive to the complainant precisely because of his or her membership in a protected class, and (3) sufficiently burdensome to materially alter the conditions of the complainant's employment." *White v. N.H. Dep't of Corr.*, 221 F.3d 254, 259–60 (1st Cir.2000). We look to all of the circumstances, including the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with Plaintiff's work performance. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Che v. Mass. Bay Trans. Auth.*, 342 F.3d 31, 40 (1st Cir.2003); *Kosereis*, 331 F.3d at 216; *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 472 (1st Cir.2002); *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir.2001). Courts are supposed to use "[c]ommon sense, and an appropriate sensitivity to social context," to distinguish between innocuous behavior and severely hostile or abusive conduct. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Kosereis*, 331 F.3d at 216. Hostile work environment claims based on racial or origin harassment are reviewed under the same standard as those based on sexual harassment. *See Nat'l R.R.*, 536 U.S. at 116 n. 10, 122 S.Ct. 2061; *see also Faragher v. Boca Raton*, 524 U.S. 775, 786–87, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Plaintiff has alleged repeated incidents that involved physically-threatening and humiliating conduct. *Docket Document Nos. 1, 40.* Defendant Necso/Redondo does little to rebut these allegations. *Docket Document No. 66.* Piris screamed abusive epithets about women and Puerto Ricans, told Plaintiff's co-worker repeatedly that she should not exist, and grabbed Plaintiff's co-worker by the arm in a fit of rage. *Docket Document No. 40.* These outbursts allegedly took place on a monthly basis, and both Plaintiff and Trinidad filed police reports as a result of Piris' behavior. *Id.* These comments are not simple teasing, offhand comments or isolated incidents. *See Faragher*, 524 U.S. at 788, 118 S.Ct. 2275; *White*, 221 F.3d at 259–60. Taken as a whole, the incidents were frequent, severe, offensive, threatening, and abusive. *See Nat'l R.R.*, 536 U.S. at 116, 122 S.Ct. 2061; *Kosereis*, 331 F.3d at 216; *Gorski*, 290 F.3d at 472; *O'Rourke*, 235 F.3d at 729. We further note that determining whether the work conditions rose to the level of a hostile work environment is "best left for the jury." *Che*, 342 F.3d at 40. Consequently, Defendant Necso/Redondo's motion for summary judgment with regard to the hostile work environment claim is denied.

### 3. *Retaliation*

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice ... or because [the employee] has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3.

Like other discrimination claims, in the absence of direct evidence, a plaintiff must first make a prima facie claim of retaliation. To present a prima facie case of retaliation, a plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal nexus between the protected activity and the firing. *Bishop v. Bell Atl. Corp.*, 299 F.3d 53, 58 (1st Cir.2002); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 262 (1st Cir.1999); *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998). Once Plaintiff makes her prima facie showing, the burden shifts to Defendant Necso/Redondo to articulate legitimate, non-retaliatory reasons for its employment decisions. *See Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996); *see also Texas Dep't of Comty. Affairs*, 450 U.S. at 252–53, 101 S.Ct. 1089. If Defendant Necso/Redondo does so, the ultimate burden falls on Plaintiff to show that the proffered legitimate reason is pretextual and that the adverse employment action resulted from the Defendant Necso/Redondo's retaliatory animus. *Fennell*, 83 F.3d at 535 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

### a. *Prima Facie Case of Retaliation*

■ Defendant Necso/Redondo does not dispute the first two elements of Plaintiff's prima facie case. *Docket Document No. 22.* The record indicates that Plaintiff engaged in a protected activity, and was subsequently terminated. *Docket Document No. 40.* We focus on the third element to determine whether there was a causal nexus between Plaintiff's EEOC complaint and her termination.

Plaintiff alleges that Defendant Necso/Redondo terminated her employment on May 20, 2002, because she filed an EEOC complaint on May 16, 2002. *Docket Document No. 1.* Defendant Necso/Redondo counters that neither Piris nor Nieves knew of the EEOC complaint when the decision to terminate Plaintiff was made and, therefore, Plaintiff cannot establish a causal connection between the two. *Docket Document No. 22.*

Providing no direct evidence, Plaintiff relies almost exclusively upon the temporal proximity between her EEOC complaint and her termination to establish the causal nexus necessary for the third prong. *Docket Document No. 40.*

The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient to establish a prima facie case uniformly require that the temporal proximity be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *see also Bishop*, 299 F.3d at 60 (finding thirty-month period insufficient).

Defendant Necso/Redondo terminated Plaintiff only four days after she filed an EEOC complaint. This clearly satisfies the "very close" requirement. *See Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 25–26 (1st Cir.2004) (finding that a one-month interval between the protected conduct and the adverse employment action provides sufficient temporal proximity to establish a prima facie case). Nieves' assertion that she had no knowledge of Plaintiff's EEOC complaint when she decided to terminate Plaintiff, *Docket Document No. 21*, is inadequate to undercut the strength of the inferences drawn from the temporal proximity. *See Wright*

*v. CompUSA, Inc.,* 352 F.3d 472, 478 (1st Cir.2003) (holding that temporal proximity alone, despite employer's proffer of a legitimate excuse, was sufficient to establish a prima facie case). Therefore, we find that Plaintiff has established a prima facie case of retaliation.

#### b. *Legitimate Excuse for Termination*

■ As Plaintiff has established a prima facie case, the burden shifts to Defendant Necso/Redondo to articulate a non-discriminatory reason for the adverse employment action. *See Fennell,* 83 F.3d at 535. Defendant Necso/Redondo asseverates that the adverse employment action was not retaliatory, but rather part of their general practice to make "reductions in force" when a project or phase of a project reached partial or total termination. *Docket Document No. 21.* According to Defendant Necso/Redondo, the Río Bayamón office had nearly reached completion and Plaintiff was terminated as a result. *Id.* Defendant Necso/Redondo supports its claim with evidence that the Río Bayamón office was closed two months later. *Id.* Proof that Plaintiff would have been terminated regardless of her protected conduct adequately carries Defendant Necso/Redondo's burden. *See, e.g., Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 685, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Having provided a legitimate reason for its employment decision, Defendant Necso/Redondo has satisfied its burden. *Wright,* 352 F.3d at 478.

#### c. *Pretext*

Under the *McDonnell Douglas* burden-shifting process, the burden returns to Plaintiff to demonstrate Defendant Necso/Redondo's stated reason was pretextual. Plaintiff can meet this burden "either directly, by persuading the Court that a discriminatory reason more likely motivated the employer or indirectly, by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

Pretext can be proven in several ways, including, but not limited to, evidence of differential treatment in the workplace, statistical evidence showing disparate treatment, temporal proximity of an employee's protected activity to an employer's adverse action, and the employer's comments that intimate a retaliatory mindset. *Mesnick v. Gen. Elec. Co.,* 950 F.2d at 824 (1st Cir.1991) (citing cases). Whatever the sources of proof, a plaintiff, in order to survive judgment as a matter of law, must present evidence from which a reasonable jury could infer that the employer retaliated against the plaintiff for engaging in protected activity. *Id.*

Plaintiff has presented sufficient evidence from which a jury could find that Defendant Necso/Redondo's stated reason for Plaintiff's termination was pretextual. *See Wright,* 352 F.3d at 478. Again, we focus on the temporal proximity between the EEOC filing and Plaintiff's termination. The four-day period is so proximate and provocative that, based upon that fact alone, a reasonable fact-finder could determine that Defendant Necso/Redondo's stated reason was pretextual. *Id.* Furthermore, though the Río Bayamón office was eventually closed and Plaintiff's position was eliminated, Plaintiff's co-worker was not terminated for another two months. *Docket Document No. 22.* Even if Plaintiff eventually would have been terminated for non-discriminatory reasons, her early termination on May 20, 2002, is potentially significant for the purpose of liability under Title VII. The First Circuit has consistently held that determinations of motive and intent, particularly

in discrimination cases, are questions better suited for the jury, as proof is generally predicated on inferences, rather than direct evidence. *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 34 (1st Cir. 1990) (quoting *Rossy v. Roche Prod. Inc.,* 880 F.2d 621, 624 (1st Cir.1989)). Accordingly, we deny Defendant Necso/Redondo's motion regarding the claims of retaliation.

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT IN PART** and **DENY IN PART** Defendant AIICO's motion for summary judgment. *Docket Document Nos. 29, 77, 78.* Thus, Plaintiff's retaliation claims survive Defendant AIICO's motion for summary judgment, while the gender and national origin claims are dismissed.

We also **GRANT IN PART** and **DENY IN PART** Defendant Necso/Redondo's motion for summary judgment. *Docket Document Nos. 20, 66.* Plaintiff's gender and national origin claims with regard to her transfer from Hato Rey to Río Bayamón are dismissed. Plaintiff's hostile work environment and retaliation claims survive Defendant Necso/Redondo's motion.

**IT IS SO ORDERED.**